CREDITORS' SERVICE CORPORATION *et al. vs.* M. JOSEPH CUMMINGS *et al.*

FEBRUARY 4, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

CAPOTOSTO, J. This is a bill of complaint brought by the Creditors' Service Corporation and the National

Service Associates, Inc., both Rhode Island corporations, against M. Joseph Cummings, chief of division of banking and insurance, department of taxation and regulation of the State of Rhode Island, and John P. Hartigan, attorney general of this State, praying that both respondents be permanently enjoined from enforcing the provisions of Public Laws, 1935, Chapter 2190. The constitutionality of that chapter being challenged upon the record by the allegations in the bill of complaint, certain constitutional questions were certified to this court for determination under the provisions of General Laws, 1923, Chapter 348, Section 1.

We entertain doubt whether the proceedings as instituted in the case at bar are legally sufficient, but as neither respondent has questioned them by demurrer or motion to dismiss and further, in view of the fact that the case was fully argued by all parties before us and that some appreciable time has elapsed since those arguments and this opinion, we will make an exception under the peculiar circumstances in this case, which, however, is not to be construed as a precedent of our attitude towards similar proceedings in the future. The constitutional questions certified to us are as follows: "Is said chapter 2190 or any section thereof unconstitutional and void in that the provisions thereof are in conflict (for any reasons stated and claimed in the bill of complaint) with the rights of the complainants or either of the complainants" as guaranteed by (1) Sec. 10, Article I, Constitution of Rhode Island, which provides that in all criminal prosecutions the accused shall not be "deprived of life, liberty, or property unless by the judgment of his peers, or the law of the land"; or (2) Sec. 12, Article I, Constitution of Rhode Island, which states that "no *ex post facto* law, or law impairing the obligation of contracts shall be passed"; or (3) Section 1, Article XIV of the amendments to the United States Constitution, generally known as the due process and equal protection section of that constitution.

The complainants have been engaged for a number of years in the business of collecting liquidated debts for others under the provisions of Public Laws, 1931, Chap. 1782, entitled: "An Act Regulating the Business of Bill Collecting." This act required the complainants to pay a license fee of one hundred dollars and to furnish a surety bond in order to carry on their respective businesses.

On June 8, 1935, the respondent M. Joseph Cummings, chief of division of banking and insurance, notified the complainants that P. L. 1935, Chap. 2190, would go into effect on July 1, and that thereafter the provisions of the act would be enforced by his department. Following the receipt of this notice, the complainants brought the present bill of complainant.

Public Laws, 1935, Chap. 2190, was approved April 12, 1935. Section 2 of that chapter reads: "This act *shall* effect July 1, 1935, and all acts and parts of acts inconsistent herewith are hereby repealed." (Italics ours.) There is an obvious omission between the words "shall" and "effect" in Sec. 2 as actually adopted. In view of the allegation in the bill of complaint that this omission makes Chapter 2190 unenforceable because of uncertainty as to when it shall take effect, we will presently consider this omission even though the question that it raises may not be strictly before us.

In the instant case, we are not concerned with any issues of fact or with the interpretation and application of an admittedly valid law. Our duty in the premises extends to a determination of the constitutional questions certified to us and then only in so far as any particular provision of Chap. 2190 so questioned is germane to the real issues in the case.

This court has repeatedly held that it will not pass upon the question of the constitutionality of an act of the general assembly that is not relevant to the case in which it is raised or where the rights of a person who attacks the constitutionality of the statute are not affected by its enforce-

ment. *Blais* v. *Franklin,* 30 R. I. 413; *Sayles* v. *Foley,* 38 R. I. 484; *Sackett* v. *Paine,* 46 R. I. 439; *State* v. *Church,* 48 R. I. 265. The complainants have framed and discussed their claim of the unconstitutionality of Chap. 2190 under two main points which they set out in their brief as follows:

"1. The defining of the practice of law by the legislature is an invasion of the judicial power of the Court.

"2. The exception from the provisions of Chapter 2190 of certain persons and corporations as provided in Clause 'B', Para. 1, 2, 5, and 7, sec. 46 is an arbitrary and unreasonable classification in violation of the equal protection of the laws as guaranteed by the Constitution of the United States of America, Amendment XIV."

We will, therefore, confine our inquiry principally to a consideration of the constitutional questions in this case as they have been presented to us by the complainants themselves.

The allegation in the bill of complaint that the omission in Sec. 2, to which we have already referred, makes the entire act unenforceable because uncertain as to when it shall take effect, is without merit. The obvious omission of a word or words between "shall" and "effect" in that section is unfortunate but not fatal. An act of the legislature is not to be declared invalid by reason of an accidental omission if the legislative intent can be ascertained from the context. It is quite clear to us that the legislature intended Chap. 2190, P. L. 1935, to take effect on July 1, 1935. But even if we grant that the language questioned by the complainants is meaningless, the result that they claim does not necessarily follow. The portion of Sec. 2, to which objection is made, is separate and distinct from the body of the act and is also severable from the repealing provision of that section. Under these circumstances such language may be disregarded and the act will then take effect from the date of its passage, which was April 12, 1935. 1 Lewis' Sutherland, Statutory Con-

struction, (2d ed.) 172. Whatever view is taken as to when said Chap. 2190 took effect, it is clear that the complainants were not prejudiced, especially since they received reasonable notice of the State's future attitude in the premises.

Public Laws, 1935, Chap. 2190, is "An Act in Amendment of Sections 44, 45, 46 and 47 of Chapter 401 of the General Laws, entitled 'Of Offenses Against Public Policy'," which deals with the unauthorized practice of the law. These sections, as amended, when summarized, provide as follows: Section 44. No person, except a duly admitted member of the Rhode Island bar, shall assume or hold himself out to the public or to another person as being qualified to practice law in this State; in Clause C, the word "person" is defined to include corporations. Section 45. No person, except a duly admitted member of the Rhode Island bar in good standing, shall practice law in this State. Clause B provides that: "The term 'practice law' as used in this section, in the next preceding section, and the next succeeding section, shall be deemed to mean the doing of any act for another person usually done by attorneys at law in the course of their profession, and without limiting the generality of the foregoing, shall be deemed to include " certain acts enumerated in succeeding paragraphs, including paragraph (3), which reads: "The undertaking or acting as a representative or on behalf of another person to commence, settle, compromise, adjust or dispose of any civil or criminal case or cause of action." Clause H provides that, the provisions of Sec. 45 shall not apply to certain lay persons, subject to specific limitations definitely set out in distinct paragraphs, such as clerks of court, students in law offices, natural persons acting in fiduciary capacity, town clerks, public accountants, and certain others, in connection with their own business or that of their immediate employer.

Section 46 provides, in substance, that corporations shall not do the acts prohibited by Secs. 44 and 45. Clause B

exempts certain designated corporations or associations from the provisions of the act in certain cases specified in separate paragraphs under that clause. The complainants call special attention to paragraphs (1), (2), (5) and (7) of this clause and section. Paragraph (1) exempts a title company when engaged in "the drawing of deeds, mortgages, and other legal instruments or in connection with the conduct of the business of such corporation." Paragraph (2) exempts, with restrictions, a public utility corporation or insurance company when "adjusting claims against such corporation or company or those insured by such company." Paragraph (5) exempts a non-profit-sharing credit corporation or association. We will have occasion to quote this paragraph in full later in this opinion. Paragraph (7) exempts, with conditions, a person or corporation engaged in selling and leasing of real estate when "drafting deeds, mortgages, leases and agreements therefor in connection with sales or leases made or negotiated by him or it . . . ." Section 47 prescribes the manner in which the act may be enforced and directs the attorney general to prosecute all violations thereof, which are expressly made punishable by fine or imprisonment, or both.

The first point briefed and argued by the complainants is that Chap. 2190, P. L. 1935, undertakes to define what constitutes the practice of law and hence is an usurpation by the legislature of judicial power in violation of Article III of the Rhode Island Constitution, which provides that "The powers of the government shall be distributed into three departments: the legislative, executive and judicial."

The legislature has the inherent power to prohibit and punish any act as a crime, provided that in exercising such power it does not violate any provision of the federal or State constitution. The courts cannot look further into the propriety of a penal statute than to ascertain whether the legislature had the power to enact it. It is a firmly established principle of constitutional law that questions

of the wisdom, policy or expediency of a statute are for the legislature alone. In determining the constitutionality of a statute, the sole issue before the court is one of legislative power. If the statute is within the power of the legislature to enact, it is the duty of the court to sustain it, irrespective of its own opinion of the wisdom, reasonableness, or necessity for the statute. .

In *LaPlante* v. *State Board of Public Roads,* 47 R. I. 258, this court, at page 260, says: "Whether the statute is reasonable or unreasonable is a question of legislative policy with which this court has no concern. If a statute is repugnant to no constitutional provision it is the duty of the court to uphold the validity of the act without regard to the question of reasonableness." In *Green* v. *Frazier,* 253 U. S. 233, 240, we find the court saying: "With the wisdom of such legislation, and the soundness of the economic policy involved we are not concerned. Whether it will result in ultimate good or harm it is not within our province to inquire." In *Nebbia* v. *New York,* 291 U. S. 502, the court, at pages 537, 538, expresses itself in unmistakable terms when it says: "Times without number we have said that the legislature is primarily the judge of the necessity of such an enactment, that every possible presumption is in favor of its validity, and that although the court may hold views inconsistent with the wisdom of the law, it may not be annulled unless palpably in excess of legislative power." See also *McLean* v. *Arkansas,* 211 U. S. 539; *Noble State Bank* v. *Haskell,* 219 U. S. 575; *Tanner* v. *Little,* 240 U. S. 369; *Gant* v. *Oklahoma City,* 289 U. S. 98; *Child* v. *Bemus,* 17 R. I. 230. Furthermore, a statute is to be construed as constitutional until the contrary clearly appears, or, as it is sometimes stated, unless its unconstitutionality is established beyond a reasonable doubt. *In re Matter of Dorrance Street,* 4 R. I. 230; *State* v. *District of Narragansett,* 16 R. I. 424; *Sayles* v. *Foley,* 38 R. I. 484; *LaPlante* v. *State Board of Public Roads, supra.*

The constitutional distribution of the powers of government is at once a grant of specific power to each department and a prohibition to the other two with reference to that same power. The right to regulate and control the practice of law is a prerogative of the judicial power, which is vested inherently and exclusively in the judicial department of the government. The Massachusetts court, in *Opinion of the Justices,* 279 Mass. 607, at page 611, says: "No statute can control the judicial department in the performance of its duty to decide who shall enjoy the privilege of practicing law." The origin, nature and extent of the power vested in this court to regulate and control the practice of law was fully discussed and determined by us in the recent case of *Rhode Island Bar Association* v. *Automobile Service Association,* 55 R. I. 122, which will be referred to hereafter as the *Bar Association* case for convenience. It is unnecessary for us to repeat what we said on this point in that opinion.

Although the legislature may not subvert the power of the judiciary, yet it may, in the exercise of the police power, pass laws which are in aid of the judicial power that it deems necessary or expedient. In the exercise of this power, the legislature may properly enact a statute designed to protect the public against imposition, incompetency and dishonesty, but it has no power to pass a law granting the right to any one to practice law. The former type of enactment tends to strengthen the judicial authority to regulate the practice of law and so assists the courts in protecting the public against practices that are not tolerated from members of the bar, while the latter is an encroachment upon the judicial power and invalid because it is in derogation of the inherent and exclusive prerogative of the court. *Rhode Island Bar Association* v. *Automobile Service Association, supra; State* v. *Cannon,* 206 Wis. 374; *In re Opinion of the Justices, supra; In re Bonam,* 255 Mich. 59; *People* v. *People's Stock Yards Bank,* 344 Ill. 462.

What constitutes the practice of law is extremely diffi-
cult, if not unwise, to even attempt to define, and so the
determination of any issue that presents this question
must be left to the facts in each particular case. The same
sections of Chap. 401, G. L. 1923, now under discussion and
before their amendment by the act in question, were con-
sidered by us in the *Bar Association* case, where we held
"that the enactment of Chap. 401, Sec. 44, and also Secs.
45, 46, and 47, was in aid of the authority of this court in
the regulation and control of the practice of law, and not
subversive of it." Although in that opinion we mentioned
the fact that, subsequently to the bringing of those pro-
ceedings, the legislature had "extensively and somewhat
comprehensively" amended and amplified the provisions
of these sections by Chap. 2190, P. L. 1935, the present
statute was not then before us.

The question that confronts us now, therefore, is to
determine whether, in amending the sections already con-
strued by us, the legislature exceeded its legitimate author-
ity and invaded the sole province of this court in the
regulation and control of the practice of law.

The complainants argue that, because the legislature has
adopted a definition of "practice law" in Clause B, Sec. 45,
to apply to that term when used in Secs. 44, 45 and 46, and
has further specified certain activities in paragraphs 1, 2,
3 and 4 of Clause B as falling within its concept of "prac-
tice law" as so defined for the purposes of the act, the legis-
lature has usurped judicial power to regulate and control
the practice of law. This argument is unsound. We find
nothing in Clause B that grants to any one the right to
engage in the practice of the law.

Chapter 2190 is concerned solely with the public policy
that shall be followed in relation to the practice of law,
and not with the regulation and control of the practice of
law itself. The courts have no more power to control the
judgment of the legislature in matters of policy, than the
legislature has to interfere with the judicial power in

determining in any case what constitutes the practice of law. In the instant case, the very language of the act recognizes the power of the judiciary in this respect where, after stating what the term "practice law" shall be deemed to mean in the amended sections, it says: ". . . . and without limiting the generality of the foregoing, shall be deemed to include" paragraphs (1), (2), (3) and (4). This general statement of what the term "practice law" shall be deemed to mean is restricted to Chap. 2190, and is adopted by the legislature solely for the purpose of avoiding objections as to what might or might not be included within that term in enforcing the act. There is no attempt on the part of the legislature, even by implication, to invade the exclusive province of the court in determining what actually constitutes the practice of law.

It is immaterial in this aspect of the case to determine whether the acts specified in paragraphs (1), (2), (3) and (4) of Clause B, Sec. 45, constitute the practice of law. The legislature in Sec. 44, Clause A, and Sec. 45, Clause A, has declared that only members of the bar may practice law and further that they alone may perform certain enumerated acts. If the enumerated acts constitute the practice of law, the statute is in aid of this court's jurisdiction, and tends to make our regulation and control in that field more effective in protecting the public against practices that a duly admitted member of the bar will not be permitted to countenance and still less to employ. *Rhode Island Bar Association v. Automobile Service Association, supra.* On the other hand, if the acts specified in paragraphs (1) to (4) do not constitute the practice of law, then there is no usurpation of judicial power by the legislature. We are, therefore, of the opinion that Chap. 2190, P. L. 1935, is not in violation of Article III of the Constitution of Rhode Island.

The complainants contend that Chap. 2190 deprives them of liberty and property contrary to the "law of the land" in violation of Sec. 10, Art. I, Constitution of Rhode

Island. This provision in our State constitution has no bearing on the questions in the instant case as we have held that it is only applicable to the rights of the accused in criminal prosecutions. *State Airport Commission* v. *May,* 51 R. I. 110; *Joslin Mfg. Co.* v. *Clarke,* 41 R. I. 350; *East Shore Land Co.* v. *Peckham,* 33 R. I. 541.

The complainants further contend that the act in question is in violation of Art. XIV, Section 1 of the amendments to the United States Constitution, commonly known as the "due process" clause. The question whether any given statute is or is not in violation of the due process clause of the federal constitution has been discussed and determined in innumerable decisions, but to our knowledge what constitutes "due process of law" under all circumstances has not been fettered by any comprehensive definition. In *Church* v. *Town of South Kingstown,* 22 R. I. 381, this court, at page 385, says: " 'Due process of law', or 'the law of the land', which terms are practically synonymous, means law in its regular course of administration through courts of justice." Similar expressions of a broad and somewhat indefinite nature are to be found not only in our own cases, but in the decisions of courts of the highest authority.

It is well settled that the legislature has the right of control in all matters affecting the public safety, morals, health and welfare, on the ground that such exercise of power falls within the police power of the State, which is vested exclusively in the legislative branch of the State government. A power of such broad and varying scope is also incapable of exact definition. In *State* v. *Dalton,* 22 R. I. 77, this court, at page 80, says: "It would be presumptuous for any court to attempt to formulate an exact definition of 'the police power of the State.' Legal definitions do not sum themselves up in single sentences. They are, and of necessity must be, more or less general and elastic in order that the courts may apply them to the infinite variety of circumstances which may arise in the

relations and affairs of mankind in civilized society. But for all practical purposes the police power of the State may be shortly defined to be the power of the legislature to make such regulations relating to the personal and property rights as look to the public health, the public safety and the public morals." *Opinion to the Governor,* 24 R. I. 603; *State* v. *Kofines,* 33 R. I. 211; *Fritz* v. *Presbrey,* 44 R. I. 207; *City of Providence* v. *Stephens,* 47 R. I. 387; *Nebbia* v. *New York, supra.*

In our opinion in the *Bar Association* case we say: "The practice of the law is affected with a public interest. It is, therefore, the right and duty of the state to regulate and control it so that the public welfare will be served and promoted. Assuring protection to duly licensed attorneys and counsellors against invasions of their franchise by unauthorized persons is only incidental or secondary to its primary purpose. Great and irreparable injury can come to other people, and the proper administration of justice can be prevented, by the unwarranted intrusion of unauthorized and unskilled persons into the practice of the law." Chapter 2190 is not in conflict with what we said in that case. A careful analysis of the statute leads us to the conclusion that it prohibits the practice of law other than as authorized by this court. Legislation that subjects an offender to punishment for practicing law while not so authorized is dictated by policy and is in the interest of and for the protection of the public. The power of the legislature to prohibit the unauthorized practice of law by individuals, associations or corporations was so recently recognized by this court in the *Bar Association* case that further citation of authority at this point is unnecessary. In our opinion, Chap. 2190 does not deprive the complainants of liberty and property "without due process of law."

Constitutional questions are of great importance and should not be presented to this court in uncertain form. It is the duty of the party raising the question to make his objections in clear and direct language, stating sepa-

rately each specific article, section and clause in the federal or State constitution that is alleged to have been violated. This has been our uniform practice and we intend to follow it strictly hereafter. The instant case furnishes an instance of a clear violation of this rule, where, in certified question 2, it is stated in the same question that Chap. 2190 is in conflict with the provisions of Art. I, Sec. 12, Constitution of Rhode Island, against an *"ex post facto law, or law impairing the obligations of contract."* Taking the question as framed, it is difficult to determine with certainty the precise point that is sought to be raised. Were it not for the fact that the complainants in effect waived the alleged violation of the *ex post facto* provision by neither briefing nor arguing that question, we would have dismissed the question as certified without further consideration as improperly presented.

The only issue remaining before us on this point is whether Chap. 2190 is a law impairing the obligation of contract. There is no merit to the complainants' contention that the statute violates this clause of the State constitution. Acting in its sovereign capacity, the State has the right to exercise its police power to promote and protect the general welfare of its citizens, even though it may inconvenience individuals and affect contracts previously entered into by them. Contracts, like other rights, are subject to this power, which the State may employ from time to time whenever experience suggests that it be exercised for the well-being of the community. In dealing with the complex problems of society, a wide discretion must necessarily be vested in the legislature to determine not only what interests of the public are to be protected but what means are necessary to accomplish that end. This is especially true in the regulation of employments which require integrity and special knowledge or skill. If an act of the legislature does not go beyond the reasonable demands of the situation and fairly tends to carry out the purpose of its enactment, we are not at liberty to inquire

into the wisdom or expediency of the act. *Prata Undertaking Co.* v. *State Board of Embalming,* 55 R. I. 454, and cases cited. In *Dent* v. *West Virginia,* 129 U. S. 114, where a statute regulating the practice of medicine was under consideration, the court, at page 122, says: "The power of the state to provide for the general welfare of its people authorizes it to prescribe all such regulations as, in its judgment, will secure or tend to secure them against the consequences of ignorance and incapacity as well as of deception and fraud." See also *Noble State Bank* v. *Haskell,* 219 U. S. 104, 111.

The statute in the instant case is designed to protect the public against the unethical and, at times, ruthless practices that are resorted to by some uncontrolled persons engaged in bill collecting for profit, especially in the case of claims against individuals who are unaware of their legal rights or who may be helpless through necessity. Counsel for the complainants urge upon us that his clients conduct their business in a proper manner, and that they are consequently the subject of unjust discrimination. This argument is one of policy and not of legislative power, which is the only matter that we can consider. As we cannot say that the statute is arbitrary, oppressive or unreasonable, we must find that it is not in violation of Art. I, Sec. 12 of the Constitution of Rhode Island.

The complainants further contend that even though Chap. 2190 be within the scope of the police power of the legislature, yet its provisions are so arbitrary and unreasonable as to deny them the equal protection of the laws guaranteed by Section 1 of the fourteenth amendment to the Constitution of the United States. While legislation enacted in the interests of the public welfare must be general in its nature, it does not follow that such legislation is invalid because it may apply to only one class of persons to the exclusion of others.

It is well established by unquestioned authority that so-called "Class" legislation is valid when there is reasonable

ground for the classification. In 2 Cooley's Constitutional Limitations, (8th ed.), at page 813, we find that distinguished author saying: "But a State may classify with reference to an evil to be prevented, and if the class discriminated against is, or reasonably might be, considered to define those from whom the evil mainly is to be feared, it properly may be picked out. A lack of abstract symmetry does not matter. The question is a practical one, dependent upon experience." In *Patsone* v. *Pennsylvania*, 232 U. S. 138, Mr. Justice Holmes, at page 144 of that opinion, says: "The demand for symmetry ignores the specific difference that experience is supposed to have shown to mark the class. It is not enough to invalidate the law that others may do the same thing and go unpunished, if, as a matter of fact, it is found that the danger is characteristic of the class named."

In *Middleton* v. *Texas Power & Light Co.*, 249 U. S. 152, the Supreme Court of the United States, at page 157, says: "There is a strong presumption that a legislature understands and correctly appreciates the needs of its own people, that its laws are directed to problems made manifest by experience, and that its discriminations are based upon adequate grounds." This doctrine was reaffirmed in *Ward & Gow* v. *Krinsky*, 259 U. S. 503.

The complainants in this case directly challenge the power of the legislature to enact the exemptions specified in Sec. 46, Clause B, Paragraphs (1), (2), (5) and (7). We have already stated that this court will not pass upon the constitutionality of a statute where the rights of a person who attacks its constitutionality are not affected by its enforcement. Applying this rule to the proceedings before us, we find that paragraphs (1), (2) and (7) deal with situations entirely foreign to the business of the complainants. Therefore, a determination of the validity of those paragraphs is not relevant in the instant case as they do not infringe upon or affect any rights of the complainants. Paragraph (5) is different. That paragraph, which

exempts a "non-profit sharing credit corporation or association" from the prohibitory provisions of the act, deals with a matter cognate to the complainants' business, which may affect their rights in the premises. This paragraph deserves special consideration.

The complainants contend that the exemption in said paragraph (5) denies them the equal protection of the law in violation of the federal constitution. We do not agree with this contention. The pertinent parts of Sec. 46 read as follows:

"Sec. 46. Clause B: Nothing in this section or the next preceding section shall be construed to limit or prevent: . . . Paragraph (5). Any non-profit sharing credit corporation or association, or its officers or agents, now licensed under chapter 1782 of the public laws, 1931, from collecting or adjusting as incidental to its main purposes, contract claims of its own members; provided, however, that if the aid of any court is to be invoked on such a claim, the same shall be turned back to the creditor-member for reference to his own attorney at law."

The exemption in this paragraph is not in favor of an unidentified entity, as contended by the complainants, even though the act omits to define the term "non-profit sharing credit corporation or association," probably for the reason that the legislature deemed a definition thereof superfluous and unnecessary when these words are read in connection with the rest of the act. This term, when separated into its component parts, clearly identifies the kind of corporation or association that the legislature intended to exempt from the provisions of the act. The words "non-profit sharing" mean that there is to be no division of profits, which in turn indicates that the activities of the entity intended for exemption must not be carried on as a business for profit. The word "credit" in its broad sense denotes the ability to borrow on an opinion conceived by the lender that he will be repaid. Bouvier Law Dictionary. In *People* v. *Wasservogle*, 77 Cal. 173, "credit" is

defined as the capacity of being trusted. The word "corporation" carries a definite meaning and an "association" is generally considered as a voluntary organization without capital stock. From these considerations we find that in using the term "non-profit sharing credit corporation or association" in paragraph (5) the legislature intended to exempt from the provisions of Chap. 2190 a corporation or voluntary association without capital stock organized and carried on solely for the mutual benefit of its members and not for profit, which limits its membership to persons who do business in whole or in part on a credit basis, and which has as its main purposes the establishment and maintenance of a credit-rating service that may be resorted to by its members to secure credit reports, and other information of a similar nature, respecting the credit safety of outstanding accounts or the financial responsibility of customers.

Section 46 provides that nothing in the section shall be construed to limit or prevent the agency described in paragraph (5) "from collecting or adjusting as incidental to its main purposes, contract claims of its own members." This is in no sense a grant of authority to the agency therein mentioned to do any act or to engage in any particular activity. With its qualifying provision, it is merely an exemption in favor of the agency named *if* such agency, solely as incidental to its main purposes, confines its activities to the collection and adjustment of contract claims of its own members and goes no farther therein than such members could legally go themselves through their own agents who are not members of the bar. A creditor has the right to attempt the peaceful collection and friendly adjustment of a bill due him through an agent, provided that the agent, in doing so, does not resort to conduct that directly or indirectly infringes upon the practice of the law. A license to practice law can only be obtained by complying with the requirements fixed by this court.

We have already considered the extent to which the

legislature may go under the police power of the State in enacting laws that are directed to conditions which, being deemed an existing evil by the legislature, it seeks to correct for the public good. As the question is fundamentally one of policy based upon experience, the State "may direct its law against what it deems the evil as it actually exists without covering the whole field of possible abuses." *Patsone* v. *Pennsylvania, supra,* at page 144. Classification by the legislature is subject to judicial review only for the purpose of determining whether the classification as made is reasonable under the circumstances and has a relation to the object sought to be accomplished by the statute. *Atchison, Topeka & Santa Fe R. R. Co.* v. *Matthews,* 174 U. S. 96, 105; *Tisdall Co.* v. *Board of Aldermen,* 57 R. I. 96; *Sayles* v. *Foley,* 38 R. I. 484, 491. In the instant case, the exemption given by paragraph (5) is reasonably related to the purposes of Chap. 2190 and is neither capricious nor arbitrary.

In so far as Public Laws, January 1935, Chapter 2190 has been considered by us in this opinion, our decision is that said Chapter 2190 is not in violation of Article 1, Sec. 10, or of Article 1, Sec. 12 of the constitution of this State, or of Article XIV, Section 1 of the amendments to the Constitution of the United States.

The papers in the case, with our decision certified thereon, are ordered returned to the Superior Court for further proceedings.

*William A. Gunning,* for petitioners.

*John P. Hartigan,* Attorney General, *John J. Cooney,* 2nd Asst. Atty Gen., for respondents.

*Judah C. Semonoff, Clarence N. Woolley, Paul R. McIntyre, Henry B. Gardner, Jr.,* for R. I. Bar Assn., as *amicus curiae.*