**In re RULE AMENDMENTS TO RULES 5.4(A) AND 7.2(C) OF THE RULES OF PROFESSIONAL CONDUCT.**

No. 2000–436–M.P.

Supreme Court of Rhode Island.

March 4, 2002.

Elizabeth A. DelPadre, Vincent A. DiMonte, Robert Corrente Providence, Robert D. Oster, Lincoln, for Plaintiff.

Lauren E. Jones, Providence, Edward H. Newman, Westerly, Kendra L. Beaver, Providence, for Defendant.

Present WILLIAMS, C.J.,
LEDERBERG, BOURCIER,
FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

■ The Ethics Advisory Panel and attorney Lauren Jones (hereinafter petitioners) have requested this Court to consider proposed amendments to Rules 5.4(a) and 7.2(c) of Article V of the Supreme Court Rules of Professional Conduct, which, if adopted, would permit lawyers to share court-awarded counsel fees or a settlement amount derived from a case that if litigated successfully would have been eligible for court-awarded counsel fees with non-profit corporations and associations.

The proposed amendment to Rule 5.4 would add thereto the following new paragraph (a)(4):

"(4) a lawyer or law firm may agree to share a statutory or tribunal-approved fee award, or a settlement in a matter eligible for such an award, with an organization that referred the matter to the lawyer or law firm, if (i) the organization is one that is not for profit, (ii) the organization is tax-exempt under federal law, (iii) the fee award or settlement is made in connection with a proceeding to advance one or more of the purposes by virtue of which the organization is tax-exempt, and (iv) the client consents in a written representation that a division of fees will be made."

The proposed amendment to Rule 7.2, entitled "Advertising" would modify the rule's paragraph (c) by adding thereto the following underlined provision:

"(c) A lawyer shall not give anything of value to a person for recommending the lawyer's services, except that a lawyer may pay the reasonable cost of advertising or written communication permitted by this rule, may pay the usual charges of a not-for-profit lawyer referral service or other legal service organization, *and may share a fee with a qualified organization in accordance with Rule 5.4(a)(4).*"

On February 16, 2001, this Court entered an order providing that following the expiration of a sixty-day period during which comments on the proposed rule changes could be submitted for our consideration we would assign the petitioners' proposed rule amendments for hearing before the Court on October 25, 2001. We invited the submission of memoranda on the proposed rule changes by members of the public and the Bar on or before October 10, 2001.

Before October 10, 2001, a subcommittee of this Court proposed an addition to the petitioners' new paragraph (a)(4) proposal, an additional qualifying condition for non-profit corporations and associations to be eligible for fee sharing pursuant to the proposed rule amendment. That requirement was that

"the organization is a public interest organization that, without such a fee sharing agreement, would lack sufficient resources to engage and compensate competent legal counsel to file suit or defend pursuant to the usual and customary market-rate arrangements that are required to obtain such services in the litigation that is the subject of the award or settlement."

The petitioners objected to the subcommittee's proposal.

At the October 25, 2001 hearing on the proposed rule amendments, the petitioners and the president of the Bar Association spoke in favor of the amendments. No one spoke in opposition to the proposed amendments, and the hearing was concluded. We have given serious consideration

to the petitioners' request concerning the proposed amendments to Rules 5.4(a) and 7.2(c), and we decline their request to amend those rules.

## I

At the public hearing on October 25, 2001, neither the petitioners nor the president of the Bar Association referred or cited to G.L.1956 chapter 27 of title 11, entitled "Law Practice."

In that legislative enactment, the General Assembly has made and declared to be criminal the very acts and conduct that the petitioners now seek to have sanctioned in their requested amendments to our Rules of Professional Conduct. In 1937, this Court upheld the constitutionality of P.L. 1935, ch. 2190, the progenitor of what is now chapter 27 of title 11 of the General Laws. *Creditors' Service Corp. v. Cummings,* 57 R.I. 291, 190 A. 2 (1937). We there noted that:

> "The legislature has the inherent power to prohibit and punish any act as a crime, provided that in exercising such power it does not violate any provision of the federal or State constitution. The courts cannot look further into the propriety of a penal statute than to ascertain whether the legislature had the power to enact it. It is a firmly established principle of constitutional law that questions of the wisdom, policy or expediency of a statute are for the legislature alone. In determining the constitutionality of a statute, the sole issue before the court is one of legislative power. If the statute is within the power of the legislature to enact, it is the duty of the court to sustain it, irrespective of its own opinion of the wisdom, reasonableness, or necessity for the statute." *Id.* at 298–99, 190 A. at 8.

■ We acknowledged also in the *Creditors' Service Corporation* opinion that

"'[t]he practice of law is affected with a public interest'" and that it was "'the right and duty of the state to regulate and control it so that the public welfare will be served and promoted'" and that "[l]egislation that subjects an offender to punishment for practicing law while not so authorized is dictated by policy and is in the interest of and for the protection of the public." *Id.* at 304, 190 A. at 10. As a matter of comity, we believe this Court should avoid enacting rules that would conflict with the Legislature's policy determination in this area as expressed in laws that it has passed in aid of the judicial power and to "assist [ ] the courts in protecting the public against practices that are not tolerated from members of the bar." *Id.* at 300, 190 A. at 9.

Because the present legislative ban on attorney fee sharing with *inter alia* nonprofit corporations (§ 11–27–3) does not violate any constitutional provisions, *Creditors' Service Corp.,* 57 R.I. at 300, 190 A. at 8–9, we believe we should respect the legislative determination that such conduct is sufficiently detrimental as a policy matter to be worthy of criminal sanctions. The statute (chapter 27 of title 11) is concerned solely with the public policy that shall be followed in relation to the practice of law, and not with the regulation and control of the practice of law itself. *Creditors' Service Corp.,* 57 R.I. at 301, 190 A. at 9.

It appears to us that if a nonprofit corporation such as that concerned in this proceeding seeking to amend our Rules of Professional Conduct were to receive any fee, or any part of a fee for services performed by an attorney, or to agree to furnish legal advice or the services of an attorney to another party, pursuant to any agreement to share in the legal fees earned by that attorney, such conduct would constitute the practice of law and

would be in violation of §§ 11–27–3, 11–27–6, or 11–27–10.[1]

We previously have noted that only those corporations organized pursuant to the Professional Service Corporations Act (G.L.1956 § 7–5.1–1) may practice law in this state, *Carter v. Berberian*, 434 A.2d 255 (R.I.1981) (per curiam), and that any such corporation may not permit or allow any unauthorized persons to practice law in violation of chapter 27 of title 11. *In re Rhode Island Bar Association*, 106 R.I. 752, 263 A.2d 692 (1970). Indeed, we have cautioned that any attorney who aids or assists any corporation, association, or individual in engaging in acts constituting the unauthorized practice of law as set out in chapter 27 of title 11 would by so doing be in violation of DR 3–101(A) of the Code of Professional Responsibility, the progenitor of what is now Article V Rule 5.5(b) of our Rules of Professional Conduct. *Berberian*, 434 A.2d at 256.

In light of our consideration of chapter 27 of title 11, our past holdings, and the General Assembly's clear public policy pronouncement expressed in its statutory enactment making unlawful and criminal the very conduct concerned in the petitioners' proposed amendments to Rules 5.4 and 7.2, and, as a matter of comity, we are not inclined to grant the petitioners' requested rule changes. If we were to do so, it would put us at variance with the public policy of the General Assembly and condone conduct by members of the bar, nonprofit corporations, and associations that are declared to be criminal by the General Assembly.

## II

In addition to concluding that the proposed rule changes would directly flout the General Assembly's clearly stated public policy against permitting the sharing of legal fees between attorneys and unauthorized nonmembers of the bar, we are also concerned that the proposed rule changes could encourage the scurrilous practice of ambulance chasing by enterprising individuals masquerading as public-need-nonprofit corporations. *See, e.g., Carter v. Berberian*, 434 A.2d 255 (R.I.1981) (per curiam).

Because of the relative ease by which a nonprofit corporation can be incorporated and organized, pursuant to G.L.1956 chapter 6 of title 7, the proposed rule changes would enable three persons who need not be residents of this state to have sole corporate voting power, to name themselves as directors on the articles of incorporation, and to thereafter elect themselves as directors, define their own duties, fix their own compensation, provide for their retirement benefits, and not be liable for any corporate obligations. Sections 7–6–23; 7–6–22; 7–6–20; 7–6–5(11); and 7–6–15.

Those three persons, or any of them, could then seek out for the nonprofit corporation's financial benefit anyone with a possible cause of action in which attorney fee awards could be realized or, according to the proposed rule changes, in which a case settlement might be reached,[2] and

---

1. General Laws 1956 § 11–27–18 exempts the Legal Aid Society from the provisions of chapter 27 of title 11, which provisions forbid, and impose penalties for, the unauthorized practice of law by individuals and corporations. In respect to Rhode Island Legal Services, Inc., that corporation was formed by a special act of the Rhode Island General Assembly, Act of February 28, 1969, 1969 R.I. Acts & Re-

solves 1425, to provide legal assistance to people unable to pay the cost of maintaining their legal rights.

2. The petitioners' proposed fee-sharing amendment also would permit a nonprofit corporation to share in the proceeds of a case settlement in a matter that if successfully litigated could have resulted in an award of

encourage litigation at no cost to the person by furnishing an attorney and advancing costs for the litigation.[3] The nonprofit corporation would, of course, negotiate with various attorneys to represent their litigants and engage whomever would offer the highest fee sharing or settlement deal with the nonprofit corporation. That, to us, however, camouflaged smacks of ambulance chasing, which does nothing to further the best interests of our noble legal profession. The mere fact that such could occur if the proposed rule changes were approved is sufficient reason for us to assume that such will occur. *See, e.g., City of Providence v. Stephens,* 47 R.I. 387, 393, 133 A. 614, 617 (1926). That, of course, is not to say, nor do we in any manner imply, that the petitioning Rhode Island American Civil Liberties Union or any of the now existing nonprofit corporations that provide volunteer pro bono attorneys for litigants in worthy causes are engaged in, or would engage in, ambulance-chasing tactics. We acknowledge the commendable and worthwhile public service that is done by those dedicated and well-intentioned nonprofit corporations. But paraphrasing the words of the late Judge Cardozo in *People ex rel. Karlin v. Culkin,* 248 N.Y. 465, 162 N.E. 487, 488 (1928), while the vast majority of lawyers and nonprofit service corporations are honest, the bar and nonprofit corporations as a whole will feel "the sting of the discredit thus put upon [them] by an unscrupulous minority."

It is for that purpose that our present Rule 6.1 of Article V of the Rules of Professional Conduct provides that "[a] lawyer should render public interest legal service * * * by providing professional services at

no fee or a reduced fee to persons of limited means or to public service or charitable groups or organizations * * *." We are confident that the bar membership has readily and consistently donated its time and services in accordance with Rule 6.1, and we know of no shortage of pro bono volunteers. We know of no better way to reward their willing and generous professional pro bono work than by protecting their court-awarded counsel fees. Of course, any pro bono attorney whose efforts have resulted in a court-awarded counsel fee can, if he or she wishes, make a voluntary financial donation to a nonprofit public service corporation, but it may not be exacted from him or her by any retainer agreement that would be illegal, pursuant to chapter 27 of title 11. *See, e.g., American Civil Liberties Union/Eastern Missouri Fund v. Miller,* 803 S.W.2d 592 (Mo.1991).

## III

## The Petitioners' Memorandum in Support of Proposed Amendments and for Review of Ethics Advisory Panel Opinion No. 2000–5.

Notwithstanding our rejection of the petitioners' proposed rule changes for reasons other than those advanced in their memorandum submitted in support of their petition for review of Ethics Advisory Panel Opinion No. 2000–5, we will nonetheless address the principal positions advanced in the memorandum. We undertake to do so because petitioners assert that the Ethics Advisory Panel's (EAP) "interpretation of Rules 5.4(a) and 7.2(c) * * *" is completely at odds with the

---

counsel fees. This proposal appears to expand upon the ABA Model Rules language.

**3.** In *Carter v. Berberian,* 434 A.2d 255 (R.I. 1981) (per curiam), this Court condemned such a practice by a nonprofit corporation

incorporated to serve as an ambulance chaser for a particular attorney. If the presently proposed rule changes were then in effect, the result in *Berberian* very well might have been different.

American Bar Association's Model Rules of Professional Conduct (ABA Standing Committee on Ethics and Professional Responsibility Formal Op. 374 (1993)) and, "that the EAP opinion has the effect of impairing First Amendment rights of the cooperating attorneys who volunteer their services to the R.I. A.C.L.U." We intend our review of those contentions to reassure the EAP that its resolution of EAP Opinion No. 2000–5 was both warranted and correct.

(a) Is EAP Opinion No. 2000–5 completely at odds with the American Bar Association Model Rules of Professional Conduct (ABA Formal Opinion 93–374)?

It is not. The ABA Model Rules of Professional Conduct, as interpreted in ABA Formal Opinion 93–374, expressly recognize, apparently in deference to the blistering dissent to the formal opinion, that notwithstanding its formal opinion concerning sharing of court awarded fees with sponsoring pro bono organizations:

> "The laws, court rules, regulations, codes of professional responsibility and opinions promulgated in the individual jurisdictions are *controlling*." (Emphasis added.)

In this jurisdiction there exist those controlling laws (chapter 27 of title 11 of the General Laws), those controlling court rules (Rules 5.4 and 7.2), and those controlling opinions promulgated by this Court in *Carter v. Berberian*, 434 A.2d 255 (R.I.1981) (per curiam); *Pearlman v. Rowell*, 121 R.I. 466, 401 A.2d 19 (1979); *In re Rhode Island Bar Association*, 106 R.I. 752, 263 A.2d 692 (1970); and *Creditors' Service Corp. v. Cummings*, 57 R.I. 291, 190 A. 2 (1937).

Accordingly, and pursuant to the express dictate of ABA Formal Opinion 93–374 concerning the propriety of a lawyer's sharing of court-awarded fees with a pro bono organization, the Ethics Advisory Panel's Advisory Opinion No. 2000–5 did not err in refusing to adopt ABA Formal Opinion 93–374 as controlling, and instead opted to consider as controlling our state statute, our Court rules, and our promulgated opinions.

■ The ABA Standing Committee on Ethics and Professional Responsibility's opinion, as stated in ABA Formal Opinion 93–374, that "[i]t is not ethically improper for a lawyer who undertakes a pro bono litigation representation at the request of a nonprofit organization * * * to share, or agree in advance to share, with the organization court-awarded fees" simply does not apply to members of the Rhode Island Bar practicing in this state. It is never ethically proper for any attorney practicing in this state to knowingly violate Rules 5.4(a) and 7.2(c) of the Rules of Professional Conduct, nor to agree in advance with a nonprofit corporation unauthorized to practice law in this state to violate § 11–27–3. In fact, such an agreement to violate a criminal statute is commonly referred to as a conspiracy, a separate criminal offense that is committed at the very moment the agreement is made.

■ (b) Does the Ethics Advisory Panel Opinion No. 2000–5 have "the effect of impairing the First Amendment rights of cooperating attorneys who volunteer their services to the R.I. A.C.L.U.?"

The petitioners in their memorandum appear to assert that EAP Opinion No. 2000–5 does in fact impair First Amendment rights by not permitting fee sharing by an attorney with the Rhode Island ACLU. They appear to base that contention on the holding in *In re Primus*, 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978); a 1989 Yale Law Journal article by Roy D. Simon, Jr., a member of the Eastern Missouri ACLU Board of Trustees and

a cooperating ACLU attorney;[4] and an oblique reference to this Court's holding in *Krikorian v. Rhode Island Department of Human Services*, 606 A.2d 671 (R.I.1992). The undergirding for their contention appears to be somewhat porous.

First, Mr. Simon succinctly and correctly points that out:

"the Supreme Court has never expressly extended First Amendment protection to fee-sharing arrangements with nonprofit groups. On the contrary, the Court has repeatedly refused to decide whether fee-sharing agreements fall within the First Amendment's scope. In *Trainmen*, for example, the dissent attacked the union for sharing legal fees, noting that the union had for many years required regional counsel to share twenty-five percent of their fees with the union. The decree below had enjoined the union from sharing fees with recommended lawyers and from permitting fee sharing with its nonlawyer investigators, but the majority did not reach the fee-sharing issue because the union had agreed to comply with the injunction against fee sharing."

"Consequently, the situation in *Primus* did not involve fee sharing per se, the state did not charge Ms. Primus with violating the fee-sharing rule, and the Court never mentioned the rule against sharing fees with nonlawyers." Roy D. Simon, Jr., *Fee Sharing Between Lawyers and Public Interest Groups*, 98 Yale L.J. 1069, 1121–22 (1989).

Secondly, the *Krikorian* case that petitioners' counsel believes may have precedential importance to this proceeding is not relevant. That case did not concern any fee-sharing plan or agreement, but instead, whether an award of counsel fees to Rhode Island Legal Services could be made under G.L.1956 § 42–92–3 (the Equal Access to Justice for Small Businesses and Individuals Act). This Court held in that case that the statute permitted an award of counsel fees to pro bono counsel and that pro bono counsel were entitled to counsel fees calculated on the same basis as would be for private parties and their attorneys. Nothing in *Krikorian* says that a pro bono attorney can agree to pay a legal service organization a part of the legal fee awarded to the attorney. Petitioners also fail to note that Rhode Island Legal Services, Inc. was formed by a special act of the Rhode Island General Assembly, Act of February 28, 1969, 1969 R.I. Acts & Resolves 1425, to give legal assistance to people unable to pay the cost of maintaining their legal rights.

After considering counsel's legal arguments and the petitioners' legal memorandum, we believe the Ethics Advisory Panel Opinion No. 2000–5 to be without error, and we need not address it any further than has been done.

The petitioners have said in the memorandum supporting their petition for review that "[t]he only real question presented by this petition is whether the Court will review the EAP Opinion, vacate it, and adopt the ABA opinion or its rationale." They add, that "a second purpose of this review proceeding would be to provide guidance to the EAP for its future consideration of advisory-opinion requests."

4. Roy D. Simon, Jr., *Fee Sharing Between Lawyers and Public Interest Groups*, 98 Yale L.J. 1069 (1989). Attorney Simon was cooperating counsel in *American Civil Liberties Union/Eastern Missouri Fund v. Miller*, 803 S.W.2d 592 (Mo.1991). In that case, a fee-sharing agreement between the ACLU and its in-house counsel was found to be invalid and unenforceable.

We are satisfied that we have appropriately responded to each of those requests.