FLAHERTY, J. and INDEGLIA, J.,
dissenting.
After much reflection, we must respectfully dissent from the majority’s holding that the Presiding Justice acted without jurisdiction and beyond her authority and that the trial justice erred in affirming that action. We further conclude that the trial justice erred when she held that the hearing committee’s refusal to take judicial notice of Laprade’s conviction was reasonable.
While we agree with the majority that ordinarily, “[ljetters, motions, and other documents addressed or provided to justices of the Superior Court do not constitute complaints * * * nor is the jurisdiction of the Superior Court invoked by letter or by communications that do not constitute a complaint[,]” DeWitt v. Wall, 796 A.2d 470, 471 (R.I.2002) (mem.), we note that the Law Enforcement Officers’ Bill of Rights (LEOBOR) provides a unique statutory scheme for disciplinary actions against law enforcement officers. In developing this statutory system, the Legislature explicitly granted to the Presiding Justice certain administrative authority. See, e.g., G.L.1956 § 42-28.6-l(2)(i) (stating that, if the two committee members selected by the officer and the agency cannot agree upon a third member, “either member will make application to the presiding justice * * * and the presiding justice shall appoint the third member” and further providing that “[u]pon written application by a majority of the hearing committee, the presiding *518 justice, in his or her discretion, may also appoint legal counsel to assist the hearing committee”); § 42 — 28.6—1(2)(ii) (providing that “on motion made by either party, the presiding justice shall have the authority to make a different disposition as to what each party is required to pay toward the appointed legal counsel’s legal fee”); § 42-28.6-4(c) (stating that the Presiding Justice “upon petition and for good cause shown” may permit the filing of an untimely hearing request by either the officer or the agency). We are of the opinion that, when acting under these provisions of LEOBOR, the Presiding Justice is acting in an administrative role and not exercising her traditional judicial authority.
We contrast the provisions setting forth the Presiding Justice’s administrative role with § 42-28.6-13(d), which provides for suspension of a law enforcement officer when that officer is charged with a misdemeanor and states that “[t]he law enforcement officer may petition the presiding justice of the superior court for a stay of the suspension without pay, and such stay shall be granted upon a showing that said delay in the criminal disposition was outside the law enforcement officer’s control” (Emphases added.) We believe the language in that section, which sets forth the standard of review for the Presiding Justice in considering an officer’s petition for a stay, indicates that such petitions should be made via an official filing with the Superior Court. Compare § 42-28.6-1(2) (providing for the appointment of the third member of the hearing committee by the Presiding Justice if the other two members cannot agree upon a third member and either “make[s] application to the presiding justice”), with § 42-28.6-13 (stating that, if suspended without pay, the officer “may petition the presiding justice of the superior court for a stay * * * and such stay shall be granted upon a showing that said delay in the criminal disposition was outside the law enforcement officer’s control”). In determining whether “said delay in the criminal disposition was outside the law enforcement officer’s control,” the Presiding Justice would be exercising a judicial role, making a proper invocation of the jurisdiction of the Superior Court a necessary prerequisite. Section 42-28.6-13(d).
It is our firm belief that requiring the filing of a complaint or miscellaneous petition in the Superior Court for all matters concerning the conduct and procedures followed by the hearing committee would lead to untenable results and immeasurably complicate disciplinary matters under LEOBOR.[1] We can envision a situation wherein the parties are unable to agree upon a third committee member and must, according to the majority’s new rule, file an official complaint in the Superior Court in order to have the Presiding Justice appoint that member. Under the majority’s view, if the committee then later desires to request an extension of the time limits set forth in § 42-28.6-5(b), it would need to amend the earlier complaint or file a new complaint for the requested continuance. In the latter alternative, there would be two separate and discrete matters docket *519 ed in the Superior Court, both regarding different procedural aspects in the same disciplinary action. To us, this creates not only the possibility, but indeed the probability, of uncertainty and confusion for the parties, as well as for the judicial system.[2] Judicial economy alone would appear to dictate that such preliminary procedural matters arising out of one disciplinary action against a particular officer should not be artificially divided into separately docketed petitions at different stages in the LEOBOR process. Consequently, we conclude that the filing of an official complaint or miscellaneous petition in the Superior Court is not necessary in these preliminary procedural matters.
We would further dispute the majority’s conclusion that the Presiding Justice exceeded her authority when she required the parties to treat the newly agreed-upon hearing date as if it had occurred on July 20, 2011, as originally scheduled by the committee. We disagree with the majority’s characterization of the Presiding Justice’s order in concluding that she “found good cause to extend the time limit beyond the thirty days set forth in § 42-28.6-5(b).” Indeed, the Presiding Justice’s order explicitly stated that she did not find good cause to extend under § 42-28.6-5(b). Accordingly, under the clear terms of the statute, the Presiding Justice could not then grant a continuance beyond the thirty-day limit, and she rightly did not do so. The Presiding Justice’s finding that good cause did not exist was in no way modified when she later stated that a new hearing date would be treated as of July 20 for purposes of the disclosure deadline of § 42-28.6-5(c).
The majority agrees with the city’s position that the hearing committee actually convened on July 22, 2011 and that, as a result, the disclosure deadline was re-set for July 12, 2011, thus permitting the city to enter all its documents into evidence before the committee. This conclusion ignores the fundamental principle of statutory construction that “individual sections [of a statute] must be considered in the context of the entire statutory scheme, not as if each section were independent of all other sections.” Ryan v. City of Providence, 11 A.3d 68, 71 (R.I.2011) (quoting Sorenson v. Colibri Corp., 650 A.2d 125, 128 (R.I.1994)). The majority limits its discussion to subsection (b) while passing over the disclosure deadline in subsection (c) of § 42-28.6-5 in a somewhat perfunctory fashion.
“We have consistently held that when the language of a statute is clear and unambiguous, [we] must interpret the statute literally and must give the words of the statute their plain and ordinary meanings.” Sisto v. America Condominium Association, Inc., 68 A.3d 603, 611 (R.I.2013) (quoting In re Estate of Manchester, 66 A.3d 426, 430 (R.I.2013)). Accordingly, “when we examine an unambiguous statute, there is no room for statutory construction and we must apply the statute as written.” Morel v. Napolitano, 64 A.3d 1176, 1179 (R.I.2013) (quoting Mutual Development Corp. v. Ward Fisher & Co., LLP, 47 A.3d 319, 328 (R.I.2012)). In applying these principles, we are of the opinion that the language of LEOBOR is clear and unambiguous with regard to the disclosure deadline. Section 42-28.6-5(c) states that the city “shall provide to the law enforcement officer” the evidence to be presented at the hearing “[n]ot less *520 than ten (10) days prior to the hearing date[.]” If the deadline is not complied with, the statute is equally clear that the remedy is the exclusion of evidence not timely disclosed. See § 42-28.6-5(e). In the instant case, the July 10, 2011 disclosure date was based on the scheduling of the hearing for July 20, 2011. Once the disclosure deadline had been reached and the error made, granting a continuance of the hearing — and by extension, the disclosure deadline — would transform the disclosure deadline into a rolling one that may be extended. Indeed, we emphasize that this elasticity is the consequence of the majority’s holding in this case. However, such an extension of the disclosure deadline is clearly not permitted in the statute. Because the city failed to present its evidence by the disclosure deadline, the city could not circumvent the application of the penalty laid out in § 42-28.6-5(e).
We emphasize that the subsections dealing with the time limits for disclosure of evidence do not contain any provision by which those deadlines may be extended or altered. See § 42-28.6-5(c) and (d). We contrast this with the provision establishing the time limits by which the hearing must be convened and a written decision rendered after the hearing has been completed, which explicitly provides that “[t]he time limits established in this subsection may be extended by the presiding justice of the superior court for good cause shown.” Section 42-28.6-5(b) (emphasis added). It is a well-established rule of statutory construction that, when the Legislature uses a phrase in one provision of a statute but omits it in another, the omission “is significant to show a different legislative intent for the two sections.” See 2A Sutherland Statutory Construction § 46:6 at 263-66 (7th rev. ed. 2014). Clearly, if the Legislature had intended that the ten-day disclosure deadline could be changed after it had been set and the deadline had passed, the Legislature knew how to provide for it. It is not for us to rewrite the statute to provide for an extension of the disclosure deadlines when the Legislature specifically did not do so. We are not unsympathetic to the city’s position regarding this seemingly draconian result, ie., excluding all the evidence the city wished to present as a consequence of missing the disclosure deadline by one day,[3] and understand the majority’s wish to give the city the full opportunity to present all its evidence. Our sympathy for the city’s plight, however, does not permit us to step in, as the majority is apparently willing to do, to provide the city a second bite of the apple after the disclosure deadline had been missed. See In re Rule Amendments to Rules 5.U(a) & 7.2(c) of *521 the Rules of Professional Conduct, 815 A.2d 47, 49 (R.I.2002) (“[(Questions of the wisdom, policy or expediency of a statute are for the legislature alone. * * * If the statute is within the power of the legislature to enact, it is the duty of the court to sustain it, irrespective of its own opinion of the wisdom, reasonableness, or necessity for the statute.”) (quoting Creditors’ Service Corp. v. Cummings, 57 R.I. 291, 298-99, 190 A. 2, 8 (1937)).
We reiterate that the statute does not cloak the Presiding Justice with the authority to extend the disclosure deadline, for good cause or otherwise. Consequently, the Presiding Justice, when faced with the request for a continuance, could not have changed the disclosure deadline even if she had chosen to continue the hearing date. We note that the Presiding Justice was essentially caught between Scylla and Charybdis — bound, on the one hand, by the clear language of the statute and the set disclosure deadline, and on the other hand, understandably wishing to be accommodating to the parties in dealing with “Counsel’s family medical exigency.” Under the circumstances, we believe the Presiding Justice did the only thing she could in attempting to accommodate the parties without violating the statute or unduly prejudicing the rights of either side. As such, we do not discern any error in the Presiding Justice’s order. We agree with Laprade’s suggestion that the order merely formalized a compromise between the parties “as a courtesy to the City’s counsel.” We also believe that the trial justice was correct in affirming the Presiding Justice’s order.
While we part company with the majority on the strictness of the disclosure deadline, we hasten to add that the city’s failure to comply with that deadline should not prohibit the city from attempting to make its case by other means. Although this issue was not reached by the majority in this case, the city sought to do so by a request that the committee take judicial notice of Laprade’s conviction in the District Court; a conviction that was not appealed. We firmly believe that the committee should have taken judicial notice of that conviction.
Section 42-28.6-10 says, “The hearing committee conducting the hearing may take notice of judicially cognizable facts * * The LEOBOR does not define “judicially cognizable facts”; however, we are in agreement with the trial justice that “[t]he taking of ‘judicial notice,’ which according to Black’s [Law Dictionary] is synonymous with judicial cognizance, is governed by Rule 201 of the Rhode Island Rules of Evidence.” As the trial justice did, we look to Rule 201, which is entitled “Judicial notice of adjudicative facts,” to inform the term “judicially cognizable fact.” Rule 201(b) says, “A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.”
The city argues that the committee should have taken judicial notice of La-prade’s conviction because the accuracy of the District Court conviction could not reasonably have been questioned. “[T]he decision to take judicial notice of prior judgments is well supported.” In re Victoria L., 950 A.2d 1168, 1175 n. 5 (R.I.2008); see also In re Shawn B., 864 A.2d 621, 624 (R.I.2005) (noting that the trial justice had taken judicial notice of the defendant’s pri- or conviction). On the federal level, “[i]t is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand.” Kowalski v. *522 Gagne, 914 F.2d 299, 305 (1st Cir.1990). In E.I. Du Pont de Nemours & Co. v. Cullen, 791 F.2d 5, 7 (1st Cir.1986), the First Circuit took judicial notice of a complaint filed in a state action after concluding that it had adequate legal power to do so. See St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir.1979) (“[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.”).
As the trial justice astutely observed, a decision to take judicial notice of a judicially cognizable fact falls within the discretion of the committee because § 42-28.6-10 says that the committee “may take notice of judicially cognizable facts.” We also agree with the trial justice, and the city, that “Laprade’s conviction is a judicially cognizable fact because it is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, namely the publicly-available records of this [sjtate.” We nevertheless depart from the trial justice’s rationale and conclude that she committed legal error when she determined that the committee’s decision to decline to take judicial notice of the conviction was a proper exercise of its discretion. In doing so, we necessarily conclude that the committee made an error of law when it declined to take judicial notice.
In her decision, the trial justice determined that LEOBOR prohibited the city from introducing any evidence at the hearing because the city had failed to present its witness and evidence list ten days before the hearing. Therefore, she ruled, it would have been inappropriate for the committee to take judicial notice of La-prade’s conviction because “ § 42-28.6-5(c) prevented] the [cjommittee from examining proof of the alleged fact in any eviden-tiary capacity.” Section 42 — 28.6—5(c)(iii) requires disclosure of, inter alia, “[a] list of all documents and other items to be offered as evidence at the hearing.” (Emphasis added.) Moreover, the failure to comply with that provision requires “the exclusion from the record of the hearing * * * evidence not timely disclosed * * Section 42-28.6-5(e). Although we agree that the city could not introduce evidence after the presiding justice ruled that it had failed to meet the disclosure requirements under § 42-28.6-5(c), that did not preclude the committee from taking judicial notice of the conviction because that doctrine provides an alternative vehicle for providing information to the decision maker without the necessity of evidence.
“Judicial notice of facts serves as a substitute for testimonial, documentary, or real evidence and relieves a proponent from formally proving certain facts that reasonable persons would not dispute.” United States v. Harper, 32 M.J. 620, 622 (A.C.M.R.1991); see also York v. American Telephone & Telegraph Co., 95 F.3d 948, 958 (10th Cir.1996) (“Judicial notice is an adjudicative device that alleviates the parties’ evidentiary duties at trial, serving as a substitute for the conventional method of taking evidence to establish facts.”) (quoting Grand Opera Co. v. Twentieth Century-Fox Film Corp., 235 F.2d 303, 307 (7th Cir.1956)); Wesley-Jessen Division of Sobering Corp. v. Bausch & Lomb Inc., 698 F.2d 862, 865 (7th Cir.1983) (“Judicial notice, in essence, is a substitute for evidence.”). It is our view that the committee should have taken judicial notice of the conviction because, even though the certified copy of the conviction could not have been offered in an evidentiary fashion, it nevertheless remained eligible to be reviewed for the purposes of judicial no *523 tice.[4] To the extent that the committee determined that § 42-28.6-5(e) precluded it from taking judicial notice, we conclude that that determination was an error of law. It is therefore our opinion that the trial justice erred when she concluded that the committee acted reasonably in declining to take notice of the conviction because nothing in § 42-28.6-5 prevented the committee from doing so.
Conclusion
Therefore, we dissent from the majority’s holding that the Presiding Justice acted without jurisdiction and in excess of her authority in ordering the parties to treat the new hearing date as if it occurred on July 20, 2011. Accordingly, we also dissent from the majority’s mandate that the hearing be conducted de novo; rather, we conclude that the matter should be remanded for the committee to take judicial notice of Laprade’s conviction in District Court and issue a new written decision.

. We pause to note that footnote 9 of the majority opinion, wherein it stated that the committee petitioned the Presiding Justice for an extension of the sixty-day limit in G.L. 1956 § 42-28.6-5(b), which was granted, appears to be inconsistent with the majority’s holding. The majority does not clarify whether the committee officially filed with the Superior Court in order to give the Presiding Justice jurisdiction to grant that extension of time nor does the majority take issue with the validity of that extension. The majority’s holding, however, would appear to indicate that the Presiding Justice would have been acting without jurisdiction in granting the extension if the petition was made directly to her.

. We would also question by what means either the officer or the agency could later appeal the final decision of the committee under § 42-28.6-12, which clearly requires filing a complaint in the Superior Court as in any other administrative appeal under the Administrative Procedures Act, G.L. 1956 chapter 42 of title 35.

. While not binding upon us, we recognize that LEOBOR’s deadlines have historically been applied strictly by the Superior Court, regardless of the consequences. In his papers to us, Laprade cites a litany of cases from the Superior Court in which the court recognized that LEOBOR was written in such a way that its rigid deadlines could not be avoided. See, e.g., Town of Westerly Police Department v. Burton, 2006 WL 2590094, at *1 n. I (R.I.Super. Sept. 7, 2006) (in which a Superior Court justice agreed that, because the town had failed to furnish documents in a timely fashion, the documents could not be introduced at the hearing and affirmed the hearing committee's decision finding the officer ”[n]ot [g]uilty based upon lack of evidence”); International Brotherhood of Police Officers Local 369 v. Town of Burrillville Police Department (PC 06-379) (R.I.Super. Feb. 1, 2006) (in which an officer lost his job without the benefit of a hearing because the officer had failed to notify the department of his committee representative in a timely fashion); Petrella v. City of Providence (MP 05-3319) (R.I.Super. June 29, 2005) (in which the then-Presiding Justice upheld the firing of an officer without the benefit of a hearing due to the failure by the officer to follow one of LEOBOR’s deadlines, noting that the "statutory mandate[s] * * * go[ ] both ways.”).

. We note that judicial notice of the conviction for "disorderly conduct/indecent exposure” may not persuade the committee to sustain the charges against Laprade. We take no position on what impact the record of conviction should have had on the committee’s decision.