**Supreme Court**

No. 2012-330-M.P.
(PC 11-7205)

City of Pawtucket                    :

            v.                       :

Nichalas Laprade.                    :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

City of Pawtucket            :

v.                           :

Nichalas Laprade.            :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**  This case came before the Supreme Court pursuant to a writ of certiorari filed by the petitioner, the City of Pawtucket (city or petitioner), seeking review of a Superior Court judgment affirming a decision of a hearing committee that was convened to adjudicate disciplinary charges against the respondent, Pawtucket police officer Nichalas Laprade (Laprade or respondent).  Before this Court, the petitioner argues (1) that the hearing committee erred in denying the city's request to reschedule the date of its first hearing and that the Superior Court justice erred by affirming the hearing committee's decision;  (2) that the Presiding Justice erred by denying the city's request to convene its first hearing after the originally scheduled date and that the Superior Court justice erred in failing to review this ruling; and (3) that the hearing committee erred in failing to take judicial notice of the respondent's criminal conviction and that the Superior Court justice erred in affirming this decision.  For the reasons set forth in this opinion, we quash the judgment of the Superior Court, vacate the decision of the hearing committee, and remand the case to the Superior Court.

- 1 -

**Facts and Travel**

On February 18, 2011, Pawtucket police officer Nichalas Laprade was convicted of disorderly conduct by indecent exposure[1] in Sixth Division District Court, a criminal conviction stemming from an incident that occurred on November 9, 2010, during which two women observed the off-duty Laprade masturbating and exposing himself while driving his personal vehicle. On May 3, 2011, the City of Pawtucket and the Department's Office of Professional Standards/Internal Affairs charged Laprade in an eighteen-count complaint, alleging violations of Department rules and regulations stemming from his indecent exposure conviction as well as other incidents of alleged misconduct, including sleeping while on duty.[2]

After being notified of the disciplinary charges against him—as well as the city's recommendation that his employment be terminated—Laprade timely filed a written request for a hearing in accordance with the Law Enforcement Officers' Bill of Rights Act (LEOBOR), as set forth in G.L. 1956 chapter 28.6 of title 42. In accordance with § 42-28.6-4, a three-person hearing committee was then selected; it was composed of Patrolman Richard Ramirez (Ramirez)—a Providence police officer selected by Laprade—and Major Bruce Moreau (Moreau) from the Pawtucket Police Department, who was chosen by the city. On June 23,

---

[1] Laprade was convicted of violating G.L. 1956 § 11-45-2, entitled "Indecent exposure — Disorderly conduct," which states that "[a] person commits indecent exposure/disorderly conduct when for the purpose of sexual arousal, gratification or stimulation, such person intentionally, knowingly, or recklessly * * * [e]xposes his or her genitals to the view of another under circumstances in which his or her conduct is likely to cause affront, distress, or alarm to that person." Section 11-45-2(a)(1). Notably, Laprade did not appeal this conviction.

[2] Specifically, Laprade was charged with one count of violating the code of ethics, five counts of conduct unbecoming of an officer, one count of criminal conduct, two counts of failing to obey orders, one count of failing to provide current contact information, one count of neglecting the duty to obey, one count of insubordination, one count of exerting undue influence upon others, one count of neglect of duty, one count of failing to maintain fitness for duty, one count of incompetence, one count of failing to meet job description, and one count of untruthfulness.

2011, these two committee members selected Sergeant Arthur Lee (Lee) of the Providence Police Department to serve as the third committee member and as the chairman of the committee. Lee proceeded to contact the parties, who agreed to hold the first scheduled hearing at 11:00 a.m. on Wednesday, July 20, 2011.

On July 11, 2011—nine days before the scheduled hearing and one day after the statutory deadline set forth in § 42-28.6-5(c)—the city provided Laprade with a list of witnesses and evidence that the city planned to present at the hearing.[3] That same day, Moreau returned from vacation and discovered that he had a conflict with the July 20 hearing date. Moreau also learned that a medical issue had arisen with a family member of the city's legal counsel that also conflicted with the hearing date. Finally, Moreau was notified that the city's delivery of the witness and evidence list would not comply with LEOBOR unless the hearing date was continued. Based on these circumstances, Moreau contacted the committee chair and requested that the hearing date be continued "a day or two" to avoid any conflicts. Moreau further stated that, if the hearing committee could not meet on one of those days, Lee should "consider drafting

---

[3] The evidence and witness list was provided to respondent by a member of the city's internal affairs office who, the record discloses, did not have experience with LEOBOR proceedings. In pertinent part, G.L. 1956 § 42-28.6-5 provides:

> "(c) <u>Not less than ten (10) days prior to the hearing date</u>, the charging law enforcement agency shall provide to the law enforcement officer:
> "(i) A list of all witnesses, known to the agency at that time, to be called by the agency to testify at the hearing;
> "(ii) Copies of all written and/or recorded statements by such witnesses in the possession of the agency; and
> "(iii) A list of all documents and other items to be offered as evidence at the hearing.
> "* * *
> "(e) Failure by either party to comply with the provisions of subsections (c) and (d) of this section shall result in the exclusion from the record of the hearing of testimony and/or evidence not timely disclosed in accordance with those subsections." (Emphasis added.)

- 3 -

a letter to the [Presiding Justice] requesting an extension of time." Lee, however, responded that legal counsel for Laprade had objected to changing the hearing date, but had offered to hold the meeting on July 20 anytime between 6 a.m. and 9 p.m. As a result, Lee confirmed that, while the timing was subject to change, the hearing would proceed on July 20 as originally scheduled.

On July 14, 2011, Moreau wrote to the Presiding Justice of the Superior Court, explaining that, upon opposing counsel's objection, the committee chair had denied the city's request for a continuance; he then asked that the statutory thirty-day timeframe for holding the first LEOBOR hearing be extended pursuant to § 42-28.6-5(b).[4] Upon receiving a copy of this letter, counsel for Laprade telephoned the Presiding Justice and requested a hearing on the matter. On July 18, 2011, a hearing took place before the Presiding Justice—although no complaint or miscellaneous petition was filed in Superior Court—at which counsel for the city submitted a memorandum of law in support of the requested continuance.[5] Although it was counsel for Laprade who requested the hearing, he nonetheless argued that Moreau's letter to the Presiding Justice was inappropriate, stating that "the Court at this point in the [LEOBOR] proceedings really doesn't have any jurisdiction to hear anything that is before it." Counsel explained that the letter had not come from the committee as whole, but rather from one member. Counsel maintained that, when faced with Moreau's request for a continuance, the committee chair had adhered to the July 20 hearing date—which was within the thirty-day timeframe

---

[4] Section 42-28.6-5(b) provides that a LEOBOR hearing shall commence within thirty days of the selection of the hearing committee chair, that all proceedings shall be completed within sixty days thereafter, and that the hearing committee must issue a written decision within thirty days of the conclusion of the proceedings. Nevertheless, the time limits established in § 42-28.6-5(b) "may be extended by the presiding justice of the superior court for good cause shown."

[5] This document—captioned "City of Pawtucket v. Officer Nich[a]las Laprade"—did not bear a Superior Court filing number, and was entitled "City of Pawtucket's petition and memorandum in support thereof for the Honorable Presiding Justice to, among other things, extend the date within which hearings must commence in the above-referenced matter."

allowed under § 42-28.6-5. Therefore, counsel for Laprade argued that the Superior Court was without jurisdiction to decide the issue, and maintained that the hearing should proceed on July 20 as planned subject only to subsequent review by the Superior Court in accordance with the appeal process specified in § 42-28.6-12.

Conversely, the city maintained that, pursuant to § 42-28.6-5(b), the Presiding Justice had jurisdiction to extend the time for the committee to hold its first hearing. Counsel for the city argued that the hearing date should be continued because a family medical issue had arisen that would be addressed on that date and also because Moreau had a commitment which conflicted with the July 20 hearing. The city also noted that a violation of the statutory requirements for presenting the witness and evidence list—mandating disclosure ten days prior to the hearing—had not yet arisen, and would occur only if the hearing proceeded as scheduled; therefore, he argued, the hearing should be continued to avoid potential procedural error. Faced with this argument, counsel for Laprade replied that he would agree to a continuance, as long as the hearing was treated for all purposes as if it was in fact being held on the original date of July 20.

On July 18, 2011, the Presiding Justice issued a written order stating that the city's failure to present the witness and evidence list ten days prior to the scheduled hearing date did not present good cause to extend the hearing date under § 42-28.6-5(b). The order further indicated that the Presiding Justice was, however, "sympathetic to Counsel's family medical exigency," and ordered the parties "to agree upon another mutually convenient date for a hearing," specifying that "the date of the hearing will still be considered as July 20, 2011 for timing purposes."

The parties subsequently agreed to hold the first hearing on Friday, July 22, 2011. On this date, the city again requested that the committee reconsider a continuance of the July 20

- 5 -

hearing date; however, this request was denied.  The hearing committee then took judicial notice of the Presiding Justice's July 18, 2011 order, specifying that it would not be marked as evidence.  Significantly, the committee refused to accept any evidence that day, despite repeated and vigorous attempts by Laprade's counsel to introduce documents and place evidence on the record.  Nonetheless, the chairman was steadfast in his refusal to take any evidence on July 22, 2011.  Instead, the proceeding concluded after the committee decided to petition the Presiding Justice to appoint legal counsel to advise the committee—which was subsequently granted—and scheduled the next meeting for September 8, 2011.

At the September 8 hearing, the city submitted its complaint against Laprade into evidence, presented an opening statement, and attempted to call its first witness.  Counsel for Laprade[6] objected to the witness being called, claiming that, pursuant to § 42-28.6-5(e), the city was precluded from presenting witnesses or evidence because it had failed to provide the evidence and witness list to Laprade at least ten days in advance of July 20.  In response, the city argued that the disclosure of the witness and evidence lists were in fact timely because the July 22 proceeding—which, in accordance with the Presiding Justice's July 18 order, was treated as having taken place on July 20—did not constitute a hearing under LEOBOR because no evidence was taken at the proceeding.[7]  Counsel for Laprade countered that the July 22 proceeding was a hearing under LEOBOR, and, in the alternative, if the committee found that it was not a hearing, the committee would need to treat the September 8 hearing as having occurred on July 20 in order to comply with the Presiding Justice's order, which explicitly stated that "the

---

[6] Laprade did not attend the September 8, 2011 hearing, or any other subsequent proceedings.

[7] Under the statute, a "hearing" is defined as "any meeting in the course of an investigatory proceeding, other than an interrogation at which no testimony is taken under oath, conducted by a hearing committee for the purpose of taking or adducing testimony or receiving evidence." Section 42-28.6-1(3) (emphasis added).

date of the hearing will still be considered as July 20, 2011 for timing purposes." (Emphasis added.)   After the parties' arguments, the committee reserved decision on the issue and adjourned.

At the next hearing, held on September 13, 2011, the parties were informed that the committee had decided that the proceeding held on July 22 was in fact a hearing and that it would be treated as if it had occurred on July 20 based on the July 18 order of the Presiding Justice.  As such, the parties were told that the committee had decided that Laprade's motion to prohibit the city from calling witnesses or introducing evidence was granted.  The city responded that, although the committee's ruling made it impossible to prove a number of charges, the city was still able to proceed on those charges in the complaint pertaining to Laprade's conviction for indecent exposure.  To do so, the city requested that—as a substitute for introducing into evidence the document reflecting the conviction—the committee take judicial notice of Laprade's conviction in accordance with § 42-28.6-10.[8]  The city—citing Lynch v. King, 120 R.I. 868, 878, 391 A.2d 117, 123 (1978)—also noted that, despite its own inability to introduce witnesses and evidence, "the Legislature has endowed this Committee with very broad powers to investigate allegations of police misconduct," and "did not intend the Committee to be bound in any way by the recommendation of a charging authority."  Accordingly, the city urged the committee to subpoena Laprade—and other witnesses—and conduct an independent examination of those witnesses.

In response, counsel for Laprade argued that the hearing committee could not—on its own initiative and in the absence of the city's evidence and witness list—subpoena witnesses

---

[8] Pursuant to § 42-28.6-10, "[t]he hearing committee conducting the hearing may take notice of judicially cognizable facts and, in addition, may take notice of general, technical, or scientific facts within its specialized knowledge."

and, in essence, transform itself into a prosecutorial body. Moreover, Laprade's counsel argued that, in order for the committee to take judicial notice of Laprade's conviction, the city would need to present documentation—presumably, the record of conviction from the District Court— which it was barred from doing because of the committee's ruling precluding the city from presenting evidence. Faced with these arguments, the committee reserved decision and requested that the parties provide further briefing on the issues raised.[9]

At the next hearing, held on November 18, 2011, the parties were informed that, the committee had decided, by a two-to-one vote, to reject the city's request to take judicial notice of Laprade's conviction for indecent exposure based on the advice of appointed legal counsel. The committee also denied the city's request to subpoena Laprade to testify, as well as the city's request that the hearing committee exercise its independent power to subpoena and examine witnesses. The committee also denied the city's request to call and question Laprade as an adverse party despite the fact that Laprade was not listed on the city's witness and evidence disclosure list.

The committee issued a written decision on December 14, 2011, which recounted the travel and rulings of the LEOBOR proceedings, and detailed the remaining charges against Laprade. This was followed by a "Findings and Conclusions" section which stated that, upon a two-to-one vote, the committee decided that due to the procedural error under § 42-28.6-5(c), the city was unable to present any witnesses or submit any documentary evidence to the committee, and was therefore unable to sustain its burden of proving the allegations. Chairman Lee noted that he "would have been inclined" to take judicial notice of Laprade's conviction if the

---

[9] Because the timeline given to the parties to provide additional briefing on the issues raised at the hearing brought the proceeding outside of the sixty days allowed to complete LEOBOR proceedings under § 42-28.6-5(b), the committee petitioned for—and was granted—an extension of time by the Presiding Justice.

committee's legal counsel had so advised. The decision concluded with a dissent issued by Moreau, who stated that the majority erred by refusing to take judicial notice of Laprade's conviction based on the requirement that the city—the party that was precluded from introducing evidence—submit documentation of that conviction.

On December 21, 2011, the city timely appealed the committee's decision to the Superior Court under the Administrative Procedures Act (APA), G.L. 1956 § 42-35-15,[10] claiming that the committee's decision was affected by error of law and abuse of discretion. Specifically, the city argued that the committee abused its discretion by refusing to continue the initial July 20, 2011 hearing date. The city also argued that, pursuant to the July 18 order, the Presiding Justice erred by ordering the parties to agree on another date, yet to treat the proceeding as if it had occurred on July 20. Finally, the city argued that the committee's refusal to take judicial notice of Laprade's conviction was based on the erroneous advice of appointed counsel and constituted an abuse of discretion.

On October 17, 2012, a justice of the Superior Court issued a written decision finding that the committee's denial of the city's request for a continuance of the July 20 hearing date "was neither in excess of statutory authority nor an abuse of discretion." The Superior Court justice proceeded to address the specific provisions of LEOBOR that allow the Presiding Justice to act at various points in the proceedings; notably, none of the provisions discussed by the Superior Court justice relates to the precise issue before this Court—a requested continuance during the initial thirty-day time period. Nonetheless, she determined that the aforementioned provisions "demonstrate a legislative intent to streamline appealable questions of procedure

---

[10] Under § 42-28.6-12(a) of LEOBOR, "[a]ppeals from all decisions rendered by the hearing committee shall be to the superior court in accordance with [G.L. 1956] §§ 42-35-15 and 42-35-15.1."

during the adjudicative process so as to avoid prolonged and costly appeals on questions of technicality." The Superior Court justice therefore determined that, because the Presiding Justice "has the statutory authority to grant the [c]ommittee relief from certain obligations with respect to deadlines, as well as to order it to take certain actions," the July 18 order of the Presiding Justice was not appealable under the APA, and further noted that, as an interlocutory order, it was not subject to review by another Superior Court justice under the law of the case doctrine.

On the issue of judicial notice, the Superior Court justice stated that under LEOBOR, the committee is vested with the discretion to take judicial notice, and noted that judicial notice of a prior conviction may be taken "despite a party's failing to formally introduce evidence of the conviction via a certified copy." However, she did not indicate how this could be accomplished when the party was precluded from introducing any evidence. Nonetheless, she determined that the committee's refusal to take judicial notice of Laprade's conviction "was reasonable and did not amount to an abuse of discretion" based on the circumstances of the LEOBOR proceedings, and noted that, furthermore, there was "no manifest error of law in the written decision of the [c]ommittee." The Superior Court justice denied the city's appeal, and a final judgment entered on October 22, 2012. The city filed a petition for certiorari on November 9, 2012, which was granted by this Court on January 10, 2013.

**Standard of Review**

As an initial matter, we are confronted with a discrepancy between the standards of review, as advocated by each party, that apply to the issues presented in this case. The petitioner argues that, pursuant to § 42-28.6-12, which governs appeals of decisions in LEOBOR proceedings, the hearing committee is deemed an administrative agency and this Court's review is therefore governed by the APA. Alternatively, citing to City of Pawtucket, Police Division v.

Ricci, 692 A.2d 678, 682 (R.I. 1997), respondent argues that in LEOBOR cases, "this Court's review is limited to an examination of the record to determine whether there is some competent evidence to support the committee's findings." Based on these apparent inconsistencies, we deem it necessary to resolve this issue.

Enacted in 1976, LEOBOR "is the exclusive remedy for permanently appointed law-enforcement officers who are under investigation by a law-enforcement agency for any reason that could lead to disciplinary action, demotion, or dismissal." In re Simoneau, 652 A.2d 457, 460 (R.I. 1995) (citing Lynch, 120 R.I. at 870 n.1, 391 A.2d at 119 n.1); § 42-28.6-15. This Court has declared that LEOBOR "is remedial in nature," and "was enacted to protect police officers from infringements of their rights in the course of investigations into their alleged improper conduct." Ims v. Town of Portsmouth, 32 A.3d 914, 925 (R.I. 2011) (quoting In re Denisewich, 643 A.2d 1194, 1196 (R.I. 1994)). Thus, although a LEOBOR proceeding is an adjudicatory mechanism, it "is designed to protect the rights of the accused officer who, according to the statute, is [designated as] 'the aggrieved law enforcement officer.'" Id. (quoting § 42-28.6-1(2)(i)).

In accordance with § 42-28.6-4, a police officer who is the subject of a departmental investigation or a disciplinary proceeding is entitled to a hearing before a hearing committee that is convened and authorized to consider the complaint. International Brotherhood of Police Officers, Local 569 v. City of East Providence, 989 A.2d 106, 109 (R.I. 2010). When convened in accordance with the provisions of LEOBOR, a hearing committee is vested with "broad powers to investigate allegations of police misconduct, hold hearings, and issue decisions that affect the individual rights of permanently appointed law enforcement officers." In re Denisewich, 643 A.2d at 1197 (citing Lynch, 120 R.I. at 878, 391 A.2d at 123). However, the

- 11 -

statutory scheme "does not give the hearing committee the power summarily to <u>dismiss</u> charges for procedural violations of the Law Enforcement Officers' Bill of Rights." <u>In re Sabetta</u>, 661 A.2d 80, 83 (R.I. 1995).

Prior to 1980, § 42-28.6-12 provided that a police officer who sought to appeal from a decision rendered by a LEOBOR hearing committee could do so in accordance with G.L. 1956 § 45-20-1.1, which provided that any police officer (and not the charging law enforcement agency) who was aggrieved by a final decision of the hearing committee could appeal the decision to the Superior Court for a trial <u>de novo</u> on the issues presented. However, the appeal process outlined in § 42-28.6-12 and § 45-20-1.1 did not provide an officer or a charging law enforcement agency with an avenue to appellate review before this Court. In <u>Kurbiec v. Bastien</u>, 120 R.I. 111, 113, 385 A.2d 667, 668 (1978) we held that, under what is now article 10, section 2 of the Rhode Island Constitution,[11] this Court could review an appeal of a Superior Court decision in a LEOBOR case by "exercising its final revisory and appellate jurisdiction pursuant to its powers to issue prerogative writs, such as certiorari." In 1980, the Legislature subsequently amended § 42-28.6-12 to provide that, if a city or town sought review of a hearing committee's final decision, it could petition this Court by writ of certiorari for relief "on the grounds that said decision was arbitrary or capricious or characterized by abuse of discretion or affected by error of law."[12] P.L. 1980, ch. 272, § 1.

In 1995, however, the Legislature dramatically revised the LEOBOR appellate process outlined in § 42-28.6-12, declaring that "[a]ppeals from all decisions rendered by the hearing

---

[11] At the time <u>Kurbiec v. Bastien</u>, 120 R.I. 111, 113, 385 A.2d 667, 668 (1978) was decided, this Court based its holding on article 12, section 1, of the amendments to the Rhode Island Constitution.

[12] In such an instance, this Court, if it saw fit, would issue the writ of certiorari directly to the hearing committee so that the record of the proceedings could be certified to the Supreme Court.

committee shall be to the superior court in accordance with sections 42-35-15 and 42-35-15.1" of the APA.[13]  P.L. 1995, ch. 19, § 1.  Moreover, the 1995 amendment specified that, "[f]or purposes of this section, the hearing committee shall be deemed an administrative agency and its final decision shall be deemed a final order in a contested case within the meaning of sections 42-35-15 and 42-35-15.1."  P.L. 1995, ch. 19, § 1.

Despite this amendment, however, this Court continued to adhere to the standard customarily utilized when reviewing LEOBOR cases, namely "[w]hen undertaking a review of the hearing committee's decision rendered pursuant to § 42-28.6-11(b), this [C]ourt does not weigh the evidence or engage in factfinding." Ricci, 692 A.2d at 682 (citing Dionne v. Jalette, 641 A.2d 744, 745 (R.I. 1994)).  Moreover, we specified that "[o]ur review is limited, rather, to an examination of the record to determine whether some competent evidence exists to support the committee's findings." Id. (citing Dionne, 641 A.2d at 745, City of East Providence v. McLaughlin, 593 A.2d 1345, 1348 (R.I. 1991), Lantini v. Daniels, 104 R.I. 572, 574, 247 A.2d 298, 299 (1968), and Hooper v. Goldstein, 104 R.I. 32, 43, 241 A.2d 809, 814-15 (1968)); see

---

[13] The appeal process contained in G.L. 1956 § 45-20-1.1 may still be utilized in certain circumstances.  Section 45-20-1.1 currently provides, in pertinent part:

"(a) Any police officer * * * aggrieved by any decision of the bureau of police and fire, or any similar department, board, or bureau of a city or town having control of the police department, or any other duly constituted authority within the police department of the city or town, which decision orders the dismissal, reduction in rank, suspension, fine, performance of extra hours of duty, loss of seniority rights, transfer with or without a reduction in pay, or reprimand, and the decision is based on charges involving moral turpitude or violation of departmental regulations, may appeal the decision to the superior court * * * provided, that no appeal is allowed unless all administrative remedies available under the municipal charter have been exhausted * * *.  Upon appeal, the police officer * * * [is] entitled to a trial de novo before a justice of the superior court without a jury."

Notably, this method of appellate review is not "exclusive of any other remedy or procedure otherwise available."  Section 45-20-3.

- 13 -

also Culhane v. Denisewich, 689 A.2d 1062, 1064 (R.I. 1997) ("The review by this [C]ourt of the findings of a hearing committee convened pursuant to the Law Enforcement Officers' Bill of Rights is both limited and highly deferential.").

Although the aforementioned standard is not incompatible with the standard under the APA, we take this opportunity to clarify that the standard of review set forth in the APA, as specified in § 42-28.6-12 of LEOBOR, is the correct standard of review in light of the 1995 amendment and we shall utilize it. Although this presents a modest change to our prior case law, we do not deem the two standards to be inconsistent or incompatible with our prior holdings.

As such, it is well settled that, when this Court reviews a judgment of the Superior Court rendered after an administrative proceeding, our review is confined to questions of law. Iselin v. Retirement Board of Employees' Retirement System of Rhode Island, 943 A.2d 1045, 1048 (R.I. 2008) (citing Rossi v. Employees' Retirement System of Rhode Island, 895 A.2d 106, 110 (R.I. 2006)). Although this Court affords "the factual findings of an administrative agency great deference, questions of law—including statutory interpretation—are reviewed de novo." Id. at 1049 (quoting In re Advisory Opinion to the Governor, 732 A.2d 55, 60 (R.I. 1999)). Thus, "[i]f legally competent evidence exists to support that determination, we will affirm it unless one or more errors of law have so infected the validity of the proceedings as to warrant reversal." Murphy v. Zoning Board of Review of South Kingstown, 959 A.2d 535, 540 (R.I. 2008) (quoting Kent County Water Authority v. State (Department of Health), 723 A.2d 1132, 1134 (R.I. 1999)). In addition, it is well settled that, as a matter of law, "[t]his Court reviews de novo whether a court has subject-matter jurisdiction over a particular controversy." Tyre v. Swain, 946 A.2d 1189, 1197 (R.I. 2008) (citing Newman v. Valleywood Associates, Inc., 874 A.2d 1286, 1288 (R.I. 2005)).

## Analysis

### Request for a Continuance

On appeal, the city contends that it was error for the hearing committee to deny the city's request for a continuance. The city also argues that the Superior Court justice erred in affirming the hearing committee's decision, and by refusing to review the Presiding Justice's July 18 order. Finally, the city assigns error directly to the Presiding Justice's order, claiming that she erred by requiring the parties to treat the hearing date as if it occurred on July 20, 2011.

As previously stated, because LEOBOR is a creature of statute, "[t]he rules of statutory construction require us to give statutory provisions their customary and ordinary meaning in the absence of legislative intent to the contrary." In re Denisewich, 643 A.2d at 1197 (citing Lynch, 120 R.I. at 873, 391 A.2d at 120). Thus, "[i]f a statutory provision is unambiguous, there is no room for statutory construction and we must apply the statute as written." Id. (citing Exeter-West Greenwich Regional School District v. Pontarelli, 460 A.2d 934, 936 (R.I. 1983)).

The comprehensive provisions of chapter 28.6 of title 42 govern LEOBOR proceedings from inception to completion. Pursuant to § 42-28.6-5(b), a hearing—defined in § 42-28.6-1(3) as "any meeting in the course of an investigatory proceeding * * * conducted by a hearing committee for the purpose of taking or adducing testimony or receiving evidence"—must be convened within thirty days after the chairperson of the hearing committee is selected. Once this initial hearing occurs, the hearing committee must complete the proceedings within sixty days; the hearing committee then has an additional thirty days thereafter to issue a written decision. Section 42-28.6-5(b). This section also provides that "[t]he time limits established in this subsection may be extended by the presiding justice of the superior court for good cause shown." Id.

- 15 -

In the case at bar, the appointment of the hearing committee chair occurred on June 23, 2011; thus, by operation of law, the parties had until July 23, 2011 to conduct the first hearing according to the thirty-day mandate in § 42-28.6-5(b). When it became apparent that there were multiple conflicts with the originally scheduled July 20 hearing date, a short continuance to July 22 was requested, which, importantly, was made within the thirty-day time limit allowed under § 42-28.6-5(b). However, when counsel for Laprade objected to the hearing date being moved, the committee chair denied the request to change the date. This refusal prompted committee member Moreau to write to the Presiding Justice, stating that "any further action to extend the time limits or reschedule the first meeting must be extended by the presiding justice."

Notably, LEOBOR is silent on whether—or under what circumstances—a hearing committee may grant a continuance for an initial hearing that would fall within the thirty-day limit outlined in § 42-28.6-5(b). The chapter does, however, state that the thirty-day time limit for the initial hearing "may be extended by the presiding justice of the superior court for good cause shown." Id. Furthermore, § 42-28.6-5(b) does not set forth the method by which a request to the presiding justice to extend the time limits may be made.[14] Nonetheless, LEOBOR proceedings are not exempt from the longstanding rule that the jurisdiction of the Superior Court must first be invoked by the filing of a complaint or miscellaneous petition and may not be invoked by letter—or telephone call—to the presiding justice. See DeWitt v. Wall, 796 A.2d

---

[14] We note that the preceding section, § 42-28.6-4, similarly allows for the extension of various initial time limits; however, it specifies that this be done "upon petition" to the presiding justice. Section 42-28.6-4(c), (d), (e), (f). Although we read this language to require the filing of a petition in Superior Court, we are also cognizant that other provisions exist within LEOBOR that provide for judicial review without specifying that a complaint must first be filed. See, e.g., § 42-28.6-1(2) (allowing presiding justice to take action "[u]pon written application" of a committee member, and upon "motion" of a party). We declare, however, that such provisions within LEOBOR are not excluded from our holding in this case that first requires the filing of a complaint or a miscellaneous petition in the Superior Court to properly invoke its jurisdiction.

470, 471 (R.I. 2002) (mem.) (despite statutory scheme allowing for review, "[l]etters, motions, and other documents addressed or provided to justices of the Superior Court do not constitute complaints under the applicable rules, nor is the jurisdiction of the Superior Court invoked by letter or by communications that do not constitute a complaint under the applicable rules"). This well settled requirement is consistent with our rules of procedure, as well as the appeal process outlined in LEOBOR.[15]

Although the dissent suggests that—by adhering to our rules of procedure and the appellate procedure outlined in LEOBOR—the requisite filing of a complaint or miscellaneous petition in the Superior Court would lead to "untenable results and immeasurably complicate disciplinary matters under LEOBOR," we cannot agree. LEOBOR proceedings are statutory proceedings that are strictly regulated; these proceedings are not ad hoc, informal avenues to police discipline. The statute unequivocally anticipates the invocation of the jurisdiction of the Superior Court at several stages of the proceedings. As such, the dissent's suggestion that a filing in the Superior Court should occur only at the end of the LEOBOR proceedings—when seeking review pursuant to the APA—is without foundation and inconsistent with the plain language of the statute. Rather, our requirement that a complaint be filed prior to the Superior Court exercising its jurisdiction in a LEOBOR proceeding will streamline the process, eliminate

---

[15] In the July 18 order, the Presiding Justice noted that "[a]ny evidentiary issues may properly come before the Court on appeal from either party under § 42-28.6-12." This authority, however, is circumscribed. Section 42-28.6-12(a) of LEOBOR clearly states that "[a]ppeals from all decisions rendered by the hearing committee shall be to the superior court in accordance with §§ 42-35-15 and 42-35-15.1." Section 42-35-15(a) allows that, under certain circumstances, an initial ruling of a hearing committee may be subject to immediate review because "[a]ny preliminary, procedural, or intermediate agency act or ruling is immediately reviewable in any case in which review of the final agency order would not provide an adequate remedy." (Emphasis added.) To do so, however, § 42-35-15(b) clearly dictates that to properly invoke the jurisdiction of the Superior Court, all such "[p]roceedings for review are instituted by filing a complaint in the superior court * * * ." (Emphasis added.)

piecemeal appeals, and provide a clear record for appellate review.

Moreover, we are convinced that a judicial proceeding occurred in this case and that the Presiding Justice was not acting in an administrative role. We are mindful that counsel for Laprade requested a hearing before the Presiding Justice concerning an issue that was contested between the parties. The Presiding Justice graciously accommodated this request and took the bench, in open court, with a stenographer present, to hear argument. The Presiding Justice then issued an order regarding a matter in which she was asked to exercise her judicial discretion. Having done so, this order was issued with the force of law. Therefore, contrary to the dissent's belief, this was a judicial proceeding and not an administrative function.

As such, in the absence of a complaint or miscellaneous petition filed in the Superior Court, it is clear that the letter sent to the Presiding Justice by Moreau—as well as the telephone call made by Laprade's counsel—were both inappropriate and insufficient means to properly invoke the jurisdiction of the Superior Court in this case. We therefore conclude that the Presiding Justice acted without jurisdiction.

Even if the Presiding Justice were authorized to proceed, we are of the opinion that she exceeded her authority by ordering the parties to select a different date and then requiring that they treat the initial hearing as if it occurred on July 20, 2011. The authority of the Presiding Justice in this area is clearly limited. Section 42-28.6-5(b) precisely—and unambiguously—states that "[t]he time limits established in this subsection may be extended by the presiding justice of the superior court for good cause shown." Thus, at this juncture, the Presiding Justice may only become involved in the LEOBOR hearing process for the purpose of extending the time limits enumerated in § 45-28.6-5(b) beyond the statutory deadlines and only upon a showing of good cause.

In the case at bar, after deciding that "the [c]ity's failure to present its witness and evidence list ten days prior to the hearing does not represent good cause for an extension of the hearing date"—a standard not required for a continuance within the initial thirty-day time limit—the Presiding Justice stated that she was "sympathetic to Counsel's family medical exigency," and directed the parties to "agree on a mutually convenient date for [the] hearing." In so doing, the Presiding Justice found good cause to extend the time limit beyond the thirty days set forth in § 42-28.6-5(b). However, by requiring that the date of the hearing "be considered as July 20, 2011 for timing purposes," the Presiding Justice erred and exceeded her authority under the unambiguous language of § 42-28.6-5(b), causing the proceedings to be fatally affected by this error of law.

Although it is apparent to the Court that this error was the result of good intentions by a sympathetic jurist, we are constrained to hold that the Presiding Justice had no authority to order the parties to treat a hearing date as having taken place on a different date. This is a fiction in which we decline to engage. See In re Sabetta, 661 A.2d at 83 ("[W]hen the language of a statute is unambiguous and expresses a clear and sensible meaning, no room for statutory construction or extension exists, and we are required to give the words of the statute their plain and obvious meaning.") (quoting Ellis v. Rhode Island Public Transit Authority, 586 A.2d 1055, 1057 (R.I. 1991)).

It is undisputed that the first meeting of the hearing committee occurred on July 22, 2011, thus satisfying § 42-28.6-5(c) by providing the respondent with at least ten days' notice of the evidence and witnesses against him in the LEOBOR proceeding.[16] As such, we are of the

---

[16] We note that, after careful review of the record, we are not convinced that the July 22, 2011 proceeding actually constituted a hearing under LEOBOR, based on the hearing committee's refusal to take any evidence despite the persistent attempts—and over the strenuous objection—

- 19 -

opinion that, from a very early stage in the LEOBOR proceedings, "one or more errors of law have so infected the validity of the proceedings as to warrant reversal." Murphy, 959 A.2d at 540 (quoting Kent County Water Authority, 723 A.2d at 1134). Police disciplinary proceedings under LEOBOR are matters of great public concern, such that the parties and the public should have confidence in the result. See Lynch, 120 R.I. at 874, 391 A.2d at 121 (noting that the exception that this Court may review matters outside the record on certiorari is applicable in LEOBOR proceedings, because the exception applies in "situations involving the public interest," and "[w]e believe that, because the police act to protect persons and property and to ensure the public safety * * * the public has an interest in the validity of the mechanism whereby allegations of improper conduct by police officers are adjudicated"). Therefore, based on the errors of law committed and our holding in this case, we deem it unnecessary to reach the other issues raised on appeal.

## Conclusion

For the reasons stated in this opinion, the decision of the Superior Court is quashed and the decision of the hearing committee is vacated. This matter may be remanded to the Superior Court with further directions to remand this matter to the hearing committee to conduct LEOBOR proceedings regarding the disciplinary charges filed against the respondent de novo and in accordance with this opinion. The rehearing may be conducted before the same hearing committee that was initially chosen to hear the charges—if the members thereof choose to reconvene—or before a hearing committee newly selected for the purpose of conducting a

of Laprade's counsel. Notably, a "hearing" is defined in § 42-28.6-1(3) as "any meeting in the course of an investigatory proceeding * * * conducted by a hearing committee for the purpose of taking or adducing testimony or receiving evidence." (Emphasis added.) However, because we vacate the hearing committee's decision and direct that this case be heard de novo by the hearing committee, we need not address this troubling issue.

- 20 -

LEOBOR proceeding de novo. The papers in this case may be returned to the Superior Court with our decision endorsed thereon.

**Flaherty, J. and Indeglia, J., dissenting.** After much reflection, we must respectfully dissent from the majority's holding that the Presiding Justice acted without jurisdiction and beyond her authority and that the trial justice erred in affirming that action. We further conclude that the trial justice erred when she held that the hearing committee's refusal to take judicial notice of Laprade's conviction was reasonable.

While we agree with the majority that ordinarily, "[l]etters, motions, and other documents addressed or provided to justices of the Superior Court do not constitute complaints * * * nor is the jurisdiction of the Superior Court invoked by letter or by communications that do not constitute a complaint[,]" DeWitt v. Wall, 796 A.2d 470, 471 (R.I. 2002) (mem.), we note that the Law Enforcement Officers' Bill of Rights (LEOBOR) provides a unique statutory scheme for disciplinary actions against law enforcement officers. In developing this statutory system, the Legislature explicitly granted to the Presiding Justice certain administrative authority. See, e.g., G.L. 1956 § 42-28.6-1(2)(i) (stating that, if the two committee members selected by the officer and the agency cannot agree upon a third member, "either member will make application to the presiding justice * * * and the presiding justice shall appoint the third member" and further providing that "[u]pon written application by a majority of the hearing committee, the presiding justice, in his or her discretion, may also appoint legal counsel to assist the hearing committee"); § 42-28.6-1(2)(ii) (providing that "on motion made by either party, the presiding justice shall have the authority to make a different disposition as to what each party is required to pay toward the appointed legal counsel's legal fee"); § 42-28.6-4(c) (stating that the Presiding Justice "upon

petition and for good cause shown" may permit the filing of an untimely hearing request by either the officer or the agency). We are of the opinion that, when acting under these provisions of LEOBOR, the Presiding Justice is acting in an administrative role and not exercising her traditional judicial authority.

We contrast the provisions setting forth the Presiding Justice's administrative role with § 42-28.6-13(d), which provides for suspension of a law enforcement officer when that officer is charged with a misdemeanor and states that "[t]he law enforcement officer may petition the presiding justice of the superior court for a stay of the suspension without pay, and <u>such stay shall be granted upon a showing that said delay</u> in the criminal disposition <u>was outside the law enforcement officer's control</u>." (Emphases added.) We believe the language in that section, which sets forth the standard of review for the Presiding Justice in considering an officer's petition for a stay, indicates that such petitions should be made via an official filing with the Superior Court. <u>Compare</u> § 42-28.6-1(2) (providing for the appointment of the third member of the hearing committee by the Presiding Justice if the other two members cannot agree upon a third member and either "make[s] application to the presiding justice"), <u>with</u> § 42-28.6-13 (stating that, if suspended without pay, the officer "may petition the presiding justice of the superior court for a stay * * * and such stay shall be granted upon a showing that said delay in the criminal disposition was outside the law enforcement officer's control"). In determining whether "said delay in the criminal disposition was outside the law enforcement officer's control," the Presiding Justice would be exercising a judicial role, making a proper invocation of the jurisdiction of the Superior Court a necessary prerequisite. Section 42-28.6-13(d).

It is our firm belief that requiring the filing of a complaint or miscellaneous petition in the Superior Court for all matters concerning the conduct and procedures followed by the hearing

committee would lead to untenable results and immeasurably complicate disciplinary matters under LEOBOR.[1] We can envision a situation wherein the parties are unable to agree upon a third committee member and must, according to the majority's new rule, file an official complaint in the Superior Court in order to have the Presiding Justice appoint that member. Under the majority's view, if the committee then later desires to request an extension of the time limits set forth in § 42-28.6-5(b), it would need to amend the earlier complaint or file a new complaint for the requested continuance. In the latter alternative, there would be two separate and discrete matters docketed in the Superior Court, both regarding different procedural aspects in the same disciplinary action. To us, this creates not only the possibility, but indeed the probability, of uncertainty and confusion for the parties, as well as for the judicial system.[2] Judicial economy alone would appear to dictate that such preliminary procedural matters arising out of one disciplinary action against a particular officer should not be artificially divided into separately docketed petitions at different stages in the LEOBOR process. Consequently, we conclude that the filing of an official complaint or miscellaneous petition in the Superior Court is not necessary in these preliminary procedural matters.

We would further dispute the majority's conclusion that the Presiding Justice exceeded her authority when she required the parties to treat the newly agreed-upon hearing date as if it

---

[1] We pause to note that footnote 9 of the majority opinion, wherein it stated that the committee petitioned the Presiding Justice for an extension of the sixty-day limit in G.L. 1956 § 42-28.6-5(b), which was granted, appears to be inconsistent with the majority's holding. The majority does not clarify whether the committee officially filed with the Superior Court in order to give the Presiding Justice jurisdiction to grant that extension of time nor does the majority take issue with the validity of that extension. The majority's holding, however, would appear to indicate that the Presiding Justice would have been acting without jurisdiction in granting the extension if the petition was made directly to her.

[2] We would also question by what means either the officer or the agency could later appeal the final decision of the committee under § 42-28.6-12, which clearly requires filing a complaint in the Superior Court as in any other administrative appeal under the Administrative Procedures Act, G.L. 1956 chapter 42 of title 35.

had occurred on July 20, 2011, as originally scheduled by the committee. We disagree with the majority's characterization of the Presiding Justice's order in concluding that she "found good cause to extend the time limit beyond the thirty days set forth in § 42-28.6-5(b)." Indeed, the Presiding Justice's order explicitly stated that she did <u>not</u> find good cause to extend under § 42-28.6-5(b). Accordingly, under the clear terms of the statute, the Presiding Justice could not then grant a continuance beyond the thirty-day limit, and she rightly did not do so. The Presiding Justice's finding that good cause did not exist was in no way modified when she later stated that a new hearing date would be treated as of July 20 for purposes of the disclosure deadline of § 42-28.6-5(c).

The majority agrees with the city's position that the hearing committee actually convened on July 22, 2011 and that, as a result, the disclosure deadline was re-set for July 12, 2011, thus permitting the city to enter all its documents into evidence before the committee. This conclusion ignores the fundamental principle of statutory construction that "individual sections [of a statute] must be considered in the context of the entire statutory scheme, not as if each section were independent of all other sections." <u>Ryan v. City of Providence</u>, 11 A.3d 68, 71 (R.I. 2011) (quoting <u>Sorenson v. Colibri Corp.</u>, 650 A.2d 125, 128 (R.I. 1994)). The majority limits its discussion to subsection (b) while passing over the disclosure deadline in subsection (c) of § 42-28.6-5 in a somewhat perfunctory fashion.

"We have consistently held that when the language of a statute is clear and unambiguous, [we] must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." <u>Sisto v. America Condominium Association, Inc.</u>, 68 A.3d 603, 611 (R.I. 2013) (quoting <u>In re Estate of Manchester</u>, 66 A.3d 426, 430 (R.I. 2013)). Accordingly, "when we examine an unambiguous statute, there is no room for statutory construction and we must

- 24 -

apply the statute as written." Morel v. Napolitano, 64 A.3d 1176, 1179 (R.I. 2013) (quoting Mutual Development Corp. v. Ward Fisher & Co., LLP, 47 A.3d 319, 328 (R.I. 2012)). In applying these principles, we are of the opinion that the language of LEOBOR is clear and unambiguous with regard to the disclosure deadline. Section 42-28.6-5(c) states that the city "shall provide to the law enforcement officer" the evidence to be presented at the hearing "[n]ot less than ten (10) days prior to the hearing date[.]" If the deadline is not complied with, the statute is equally clear that the remedy is the exclusion of evidence not timely disclosed. See § 42-28.6-5(e). In the instant case, the July 10, 2011 disclosure date was based on the scheduling of the hearing for July 20, 2011. Once the disclosure deadline had been reached and the error made, granting a continuance of the hearing—and by extension, the disclosure deadline—would transform the disclosure deadline into a rolling one that may be extended. Indeed, we emphasize that this elasticity is the consequence of the majority's holding in this case. However, such an extension of the disclosure deadline is clearly not permitted in the statute. Because the city failed to present its evidence by the disclosure deadline, the city could not circumvent the application of the penalty laid out in § 42-28.6-5(e).

We emphasize that the subsections dealing with the time limits for disclosure of evidence do not contain any provision by which those deadlines may be extended or altered. See § 42-28.6-5(c) and (d). We contrast this with the provision establishing the time limits by which the hearing must be convened and a written decision rendered after the hearing has been completed, which explicitly provides that "[t]he time limits established in this subsection may be extended by the presiding justice of the superior court for good cause shown." Section 42-28.6-5(b) (emphasis added). It is a well-established rule of statutory construction that, when the Legislature uses a phrase in one provision of a statute but omits it in another, the omission "is

significant to show a different legislative intent for the two sections." See 2A Sutherland Statutory Construction § 46:6 at 263-66 (7th rev. ed. 2014). Clearly, if the Legislature had intended that the ten-day disclosure deadline could be changed after it had been set and the deadline had passed, the Legislature knew how to provide for it. It is not for us to rewrite the statute to provide for an extension of the disclosure deadlines when the Legislature specifically did not do so. We are not unsympathetic to the city's position regarding this seemingly draconian result, i.e., excluding all the evidence the city wished to present as a consequence of missing the disclosure deadline by one day,[3] and understand the majority's wish to give the city the full opportunity to present all its evidence. Our sympathy for the city's plight, however, does not permit us to step in, as the majority is apparently willing to do, to provide the city a second bite of the apple after the disclosure deadline had been missed. See In re Rule Amendments to Rules 5.4(a) & 7.2(c) of the Rules of Professional Conduct, 815 A.2d 47, 49 (R.I. 2002) ("[Q]uestions of the wisdom, policy or expediency of a statute are for the legislature alone. * * * If the statute is within the power of the legislature to enact, it is the duty of the court to sustain it,

---

[3] While not binding upon us, we recognize that LEOBOR's deadlines have historically been applied strictly by the Superior Court, regardless of the consequences. In his papers to us, Laprade cites a litany of cases from the Superior Court in which the court recognized that LEOBOR was written in such a way that its rigid deadlines could not be avoided. See, e.g., Town of Westerly Police Department v. Burton, 2006 WL 2590094 at *1 n.1 (R.I. Super. Sept. 7, 2006) (in which a Superior Court justice agreed that, because the town had failed to furnish documents in a timely fashion, the documents could not be introduced at the hearing and affirmed the hearing committee's decision finding the officer "[n]ot [g]uilty based upon lack of evidence"); International Brotherhood of Police Officers Local 369 v. Town of Burrillville Police Department (PC 06-379) (R.I. Super. Feb. 1, 2006) (in which an officer lost his job without the benefit of a hearing because the officer had failed to notify the department of his committee representative in a timely fashion); Petrella v. City of Providence (MP 05-3319) (R.I. Super. June 29, 2005) (in which the then-Presiding Justice upheld the firing of an officer without the benefit of a hearing due to the failure by the officer to follow one of LEOBOR's deadlines, noting that the "statutory mandate[s] * * * go[] both ways.").

irrespective of its own opinion of the wisdom, reasonableness, or necessity for the statute.")
(quoting Creditors' Service Corp. v. Cummings, 57 R.I. 291, 298-99, 190 A. 2, 8 (1937)).

We reiterate that the statute does not cloak the Presiding Justice with the authority to extend the disclosure deadline, for good cause or otherwise. Consequently, the Presiding Justice, when faced with the request for a continuance, could not have changed the disclosure deadline even if she had chosen to continue the hearing date. We note that the Presiding Justice was essentially caught between Scylla and Charybdis—bound, on the one hand, by the clear language of the statute and the set disclosure deadline, and on the other hand, understandably wishing to be accommodating to the parties in dealing with "Counsel's family medical exigency." Under the circumstances, we believe the Presiding Justice did the only thing she could in attempting to accommodate the parties without violating the statute or unduly prejudicing the rights of either side. As such, we do not discern any error in the Presiding Justice's order. We agree with Laprade's suggestion that the order merely formalized a compromise between the parties "as a courtesy to the City's counsel." We also believe that the trial justice was correct in affirming the Presiding Justice's order.

While we part company with the majority on the strictness of the disclosure deadline, we hasten to add that the city's failure to comply with that deadline should not prohibit the city from attempting to make its case by other means. Although this issue was not reached by the majority in this case, the city sought to do so by a request that the committee take judicial notice of Laprade's conviction in the District Court; a conviction that was not appealed. We firmly believe that the committee should have taken judicial notice of that conviction.

Section 42-28.6-10 says, "The hearing committee conducting the hearing may take notice of judicially cognizable facts * * * ." The LEOBOR does not define "judicially cognizable

- 27 -

facts"; however, we are in agreement with the trial justice that "[t]he taking of 'judicial notice,' which according to Black's [Law Dictionary] is synonymous with judicial cognizance, is governed by Rule 201 of the Rhode Island Rules of Evidence." As the trial justice did, we look to Rule 201, which is entitled "Judicial notice of adjudicative facts," to inform the term "judicially cognizable fact." Rule 201(b) says, "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

The city argues that the committee should have taken judicial notice of Laprade's conviction because the accuracy of the District Court conviction could not reasonably have been questioned. "[T]he decision to take judicial notice of prior judgments is well supported." In re Victoria L., 950 A.2d 1168, 1175 n.5 (R.I. 2008); see also In re Shawn B., 864 A.2d 621, 624 (R.I. 2005) (noting that the trial justice had taken judicial notice of the defendant's prior conviction). On the federal level, "[i]t is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990). In E.I. Du Pont de Nemours & Co. v. Cullen, 791 F.2d 5, 7 (1st Cir. 1986), the First Circuit took judicial notice of a complaint filed in a state action after concluding that it had adequate legal power to do so. See St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

As the trial justice astutely observed, a decision to take judicial notice of a judicially cognizable fact falls within the discretion of the committee because § 42-28.6-10 says that the

committee "may take notice of judicially cognizable facts." We also agree with the trial justice, and the city, that "Laprade's conviction is a judicially cognizable fact because it is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, namely the publicly-available records of this [s]tate." We nevertheless depart from the trial justice's rationale and conclude that she committed legal error when she determined that the committee's decision to decline to take judicial notice of the conviction was a proper exercise of its discretion. In doing so, we necessarily conclude that the committee made an error of law when it declined to take judicial notice.

In her decision, the trial justice determined that LEOBOR prohibited the city from introducing any evidence at the hearing because the city had failed to present its witness and evidence list ten days before the hearing. Therefore, she ruled, it would have been inappropriate for the committee to take judicial notice of Laprade's conviction because "§ 42-28.6-5(c) prevent[ed] the [c]ommittee from examining proof of the alleged fact in any evidentiary capacity." Section 42-28.6-5(c)(iii) requires disclosure of, inter alia, "[a] list of all documents and other items to be offered as evidence at the hearing." (Emphasis added.) Moreover, the failure to comply with that provision requires "the exclusion from the record of the hearing * * * evidence not timely disclosed * * * ." Section 42-28.6-5(e). Although we agree that the city could not introduce evidence after the presiding justice ruled that it had failed to meet the disclosure requirements under § 42-28.6-5(c), that did not preclude the committee from taking judicial notice of the conviction because that doctrine provides an alternative vehicle for providing information to the decision maker without the necessity of evidence.

"Judicial notice of facts serves as a substitute for testimonial, documentary, or real evidence and relieves a proponent from formally proving certain facts that reasonable persons

would not dispute." United States v. Harper, 32 M.J. 620, 622 (A.C.M.R. 1991); see also York v. American Telephone & Telegraph Co., 95 F.3d 948, 958 (10th Cir. 1996) ("Judicial notice is an adjudicative device that alleviates the parties' evidentiary duties at trial, serving as a substitute for the conventional method of taking evidence to establish facts.") (quoting Grand Opera Co. v. Twentieth Century-Fox Film Corp., 235 F.2d 303, 307 (7th Cir. 1956)); Wesley-Jessen Division of Schering Corp. v. Bausch & Lomb Inc., 698 F.2d 862, 865 (7th Cir. 1983) ("Judicial notice, in essence, is a substitute for evidence."). It is our view that the committee should have taken judicial notice of the conviction because, even though the certified copy of the conviction could not have been offered in an evidentiary fashion, it nevertheless remained eligible to be reviewed for the purposes of judicial notice.[4] To the extent that the committee determined that § 42-28.6-5(e) precluded it from taking judicial notice, we conclude that that determination was an error of law. It is therefore our opinion that the trial justice erred when she concluded that the committee acted reasonably in declining to take notice of the conviction because nothing in § 42-28.6-5 prevented the committee from doing so.

**Conclusion**

Therefore, we dissent from the majority's holding that the Presiding Justice acted without jurisdiction and in excess of her authority in ordering the parties to treat the new hearing date as if it occurred on July 20, 2011. Accordingly, we also dissent from the majority's mandate that the hearing be conducted de novo; rather, we conclude that the matter should be remanded for the committee to take judicial notice of Laprade's conviction in District Court and issue a new written decision.

---

[4] We note that judicial notice of the conviction for "disorderly conduct/indecent exposure" may not persuade the committee to sustain the charges against Laprade. We take no position on what impact the record of conviction should have had on the committee's decision.

- 30 -



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**  City of Pawtucket v. Nichalas Laprade.

**CASE NO:**  No. 2013-330-M.P.
(PC 11-7205)

**COURT:**  Supreme Court

**DATE OPINION FILED:**  July 2, 2014

**JUSTICES:**  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**  Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**  Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Presiding Justice Alice B. Gibney

Associate Justice Sarah Taft-Carter

**ATTORNEYS ON APPEAL:**

For Petitioner:  Vincent F. Ragosta, Jr., Esq.

For Respondent:  Joseph F. Penza, Jr., Esq.